## AMERICAN SURETY CO. OF NEW YORK et al. v. THOMPSON et al.

### No. 1445—5672.

Commission of Appeals of Texas, Section A.

May 16, 1931.

Adair Dyer, J. H. Synnott, Turner, Rodgers & Winn, R. L. Stennis, and Bartlett, Thornton & Montgomery, all of Dallas, for plaintiffs in error.

J. W. Hassell and F. J. Scurlock, both of Dallas, and Freeman, McReynolds & Hay, of Sherman, for defendants in error.

CRITZ, J.

The Court of Civil Appeals makes a very clear, extended, and correct statement of the issues of this case, and we refer to and adopt the statement of that court. 23 S.W.(2d) 820, 821.

It seems that originally J. L. Dyer and G. S. Thompson each filed a suit in the district court of Dallas county against W. L. Morgan and the American Surety Company of New York on a bond executed by Morgan as principal and the surety company as surety. This bond was filed by Morgan at the time he filed in the office of the secretary of state an application for a permit to promote and sell stock in a corporation to be organized and chartered under the laws of the state of Texas in accordance with what was then known as the Blue Sky Law of Texas (General Laws, 23d Legislature, 1913, First Called Session, p. 66, c. 32). Also F. R. Carlton and M. Murphy were joined as defendants. The two suits were later consolidated and tried together in the district court. Based on a verdict of the jury on special issues, the court entered judgment against Morgan, the American Surety Company, Carlton, and Murphy and in favor of J. L. Dyer for $3,625, and in favor of G. S. Thompson in the sum of $3,915. These were the amounts paid by them respectively on stock subscriptions, with 6 per cent. interest from the time of payment. Morgan, American Surety Company, Carlton, and Murphy all appealed to the Court of Civil Appeals, where the judgment of the district court was affirmed. All four of said appellants in the Court of Civil Appeals have prosecuted separate writs of error to the Supreme Court, and all have been granted.

It seems from the record before us, and the opinion of the Court of Civil Appeals that on May 27, 1920, W. L. Morgan made application

to the secretary of state of this state for a permit to promote and sell stock in a corporation to be organized under the laws of Texas in accordance with what was then known as the Blue Sky Law. The application gave the name of the proposed corporation, the purpose for which it was to be incorporated, the amount of the capital stock, the par value of each share, the commission to be paid on the sale of stock, the amount of promotion fees, incidental expenses, attorney's fees, charter fees, franchise taxes, and permit fees. The application further provided that the promoters and those having charge of the organization and sale of the stock in said proposed corporation were to sell the stock as quickly as possible after receiving the permit, and that they were to pay all expenses of organization out of the 10 per cent. allowed for selling the stock. It was also stipulated that the stock was to be sold partly by the promoters and partly by commission brokers. The names and addresses of the promoters of the proposed corporation were stated, among them being Morgan, Sansom, and Carlton. Morgan, Carlton, and Riley were named as trustees who were to hold the money and other property collected by the promoters. The Guaranty Bank & Trust Company of Dallas, Tex., was designated as the depository. The application was sworn to by Morgan, and was accompanied by blank form of note and subscription blanks to be used. The application will be considered as in pursuance of and in conformity with the requirements of the statute.

At the time of the filing of the application, Morgan filed a bond in the sum of $10,000, executed by himself as principal and the American Surety Company of New York as surety. The contents of the bond are set out in the opinion of the Court of Civil Appeals, and for the purposes of this opinion we treat it as a statutory bond.

It is further shown that, at a meeting of the directors of this proposed corporation held in Dallas on June 3, 1920, Morgan was authorized to sell stock for a period of two years. The amount of stock to be sold was $125,000, as set out in the application filed with the secretary of state. At this meeting it was stipulated that all money and notes collected were to be deposited in the designated depository subject to the order of the trustees. By-laws were adopted providing for officers and eight directors. At this meeting it was agreed to purchase machinery and equipment for operation. The sum of $12,500 was voted to Morgan to pay for a list of names for designs for covers to be furnished by him. Morgan was given a credit of $12,500 on the books of the company upon his filing this list.

It is shown that in June, 1920, Morgan visited J. L. Dyer, one of the appellees, for the purpose of soliciting his subscription for stock. After some negotiations, Dyer, on or about July 19, 1920, subscribed for 50 shares of stock ($5,000). It is also shown that Morgan opened negotiations with S. G. Thompson, and about the same date, July 19, 1920, secured his subscription for 50 shares of stock. On the same date Dyer and Thompson each executed four notes for $1,250 each for the stock subscribed for by them. These notes were payable one day after date, ninety days, six months, and nine months, respectively.

On or about September 14, 1920, another meeting of the board of directors was held which was attended by both Dyer and Thompson, and at this meeting they were both elected directors. Morgan reported to this meeting the placing of orders for machinery, paper, etc., previously authorized, and, according to the testimony of Dyer and Thompson, said he was ready to begin business. It was also agreed at this meeting, Dyer and Thompson being present, that the concern should begin business and a building leased for that purpose. Dyer and Thompson were called on for the payment of their first two notes, and each, during or after the holding of this meeting, paid the amounts here sued for, Dyer paying $2,500 and Thompson $2,700. A building was leased in December and some machinery and equipment installed.

Later in the early part of the following February, Dyer and Thompson called on Morgan and requested him to show them a list of those who had subscribed for stock and to give them certain other information with reference to the notes and resources of the company. Morgan refused to furnish this information, and Dyer and Thompson then demanded a refund of the amounts they had paid and the surrender of their unpaid notes. Morgan refused to comply with these demands and Dyer and Thompson withdrew.

Some time later a letter was written on behalf of Dyer and Thompson refusing to consent to the manner in which the funds of the proposed corporation were being handled and demanding a return of the money they had paid. This demand was not met.

On March 5, 1921, after the above transaction, Morgan, Murphy, and Carlton, with the consent of all the parties interested, except Thompson and Dyer, filed in the office of the county clerk of Dallas county a declaration of trust. This instrument authorized the trustees named to take charge of the property and money of the proposed corporation and engage in practically the same business that the proposed corporation was to have engaged in. Business was begun and conducted by the trustees in the manner authorized by the declaration of trust until March, 1922.

On March 14, 1922, Morgan, Murphy, and Carlton incorporated the concern, using the assets of the trust estate. The subscribers to

this charter were W. L. Morgan, M. Murphy, and F. R. Carlton. Dyer and Thompson never consented to this. The suit was filed on May 24, 1921.

We wish here to state that we have used the statement of the Court of Civil Appeals with little change in making this statement.

Before proceeding further with this opinion, we deem it expedient to quote the following provisions of chapter 32, General Laws First Called Session, 33rd Legislature, 1913:

"Sec. 4. * * *

"No permit shall be granted unless there shall appear upon the subscription lists and contracts of such corporation or proposed corporation, in bold type, the amount of the commissions, promotion fees and other estimated expenses incident to the sale of such stock, and the interest which the officer, agent, employee or promoter selling or contracting to sell such stock has in such sale; nor shall such permit be granted until the applicants therefor have entered into a bond for not less than one thousand dollars. ($1000) nor more than one hundred thousand dollars ($100,000), the same to be fixed by the secretary or commissioner at not more than ten per cent of the stock proposed to be issued. The said bond shall be payable to the secretary or commissioner as the case may be, and his successor in office, conditioned that the facts set forth in the application for such permit, and the proof and statements offered to such secretary or commissioner, upon which the application is based, are true, and that they will comply with the provisions of this act in the sale of the stock of such corporation or proposed corporation. Said bond may be made with individual sureties or a surety company authorized to do business in the State of Texas, and the bond shall be approved by the secretary or commissioner."

"Sec. 6. Any person who shall be induced to purchase any stock of any corporation or proposed corporation by the officers, agents, employees, promoters or trustees, by reason of any misrepresentation of any material fact concerning such stock, such person or persons shall have the right to bring suit upon the bond above provided for, and such bond shall be subject to, and security for, such person so purchasing the stock, provided that such person shall not be entitled to recover more than the money paid, or the actual value of the property given, or the labor performed, in exchange for such stock, with legal interest from the date of the payment or the performance of the services, or the transfer of the property. * * *

"Sec. 7. All moneys or other things of value collected by such corporation or the promoters of a proposed corporation, for the sale of its stock, or contract for the sale of its stock, shall be deposited by said corporation to its

credit, or by the promoters of a proposed corporation, to the credit of its proposed officers or trustees, with the exception of the amount allowed for commissions, promotion fees and other incidental expenses, with a bank, bank and trust company or trust company incorporated under the laws of this State, or of the United States.".

"Sec. 12a. At the expiration of two years from the granting of a permit under this act if the proposed corporation has failed to organize, then all subscribers must be refunded the amount paid to the promoter or trustee; provided, however, that the secretary or commissioner may grant an extension of time for the sale of securities."

There are four applications for writs of error presented here, all of which were granted. These applications present numerous assignments of error and propositions thereunder. Furthermore, briefs are filed by the several parties, together with numerous written arguments. The record itself is very voluminous. Taking all of these things into consideration, it is manifestly out of the question for us to take up and discuss all of the assignments presented without extending this opinion to such a length as to be unjustified. We shall therefore content ourselves with a general discussion of the case.

It will be noted, in fact it is argued by Dyer and Thompson. that their suit is based on two general grounds, (a) on the bond under the statute; (b) and for conversion.

The suit on the bond is against Morgan as principal and the surety company as surety, and is based on two statutory grounds, fraud and failure to complete the organization of the corporation within two years.

The suit against Morgan, Murphy, and Carlton is based on alleged conversion of the property of the proposed corporation when the trust was created and the assets of the proposed corporation transferred to the trust without the consent of Dyer and Thompson. The record shows that Dyer and Thompson recovered on all grounds alleged.

■ To our minds, the above brings about a rather peculiar and impossible situation. The suit against Morgan and the surety company for fraud, while based on the statute, is in the nature of an action in equity for a rescission. On the other hand, the suit against Morgan, Murphy, and Carlton for the value of the property converted by them when the trust estate was created, and the assets of the proposed corporation transferred thereto, is an action at law for damages. It follows that both these remedies cannot be asserted in the same suit, and both recovered on. In other words, Dyer and Thompson cannot recover against Morgan and the surety company in an action on a bond for fraud, and also in the same suit recover against Morgan,

Murphy, and Carlton for the conversion of the assets involved.

In connection with the above holding, we call attention to the fact that the judgment against Morgan and the surety company on the bond for fraud is in exactly the same amount as the judgment against Morgan, Murphy, and Carlton for conversion and failure to incorporate within two years. Manifestly this is erroneous.

■ If the judgment on the bond is based on fraud, under section 6, supra, then under the statute the measure of recovery is the amount paid, with 6 per cent. interest from the date of payment.

■ If the judgment on the bond is based on failure to incorporate within two years, under section 12a of the act, then the measure of recovery is the amount paid, and no provision for interest is made. Of course under the general law interest would be due from the date the money should have been refunded.

If the recovery is on the alleged conversion, then the measure of damages would be the value of the interest of Dyer and Thompson in the property converted, with 6 per cent. interest from the date of conversion.

The discussion above demonstrates that Dyer and Thompson cannot in the same suit maintain the action on the bond for fraud and the action for conversion. The two actions are absolutely inconsistent and conflicting. This is because, in order for a recovery to be had on the bond for fraud, the purchase of the stock must be repudiated, while, in order for a recovery to be had in an action for damages for conversion, the purchase of the stock must be affirmed. Of course there are instances in which remedies are cumulative, and in such cases two or more remedies may be asserted in the same suit, but in cases such as this, where the plaintiff must either affirm or repudiate the original contract, he must make an election.

■■ Also we think the trial court erred in refusing to submit the issue of value as applied to the action for conversion. As to this the measure of damages is the value of the interest of Dyer and Thompson in the properties of the corporation at the time of the conversion, with legal interest from that date, and not from the date they paid their money. The Court of Civil Appeals holds that the evidence is conclusive on this question. We disagree with this holding. The evidence is conclusive as to the value of the money paid in by them, but this is not the test.

■ In view of the fact that this cause must be reversed, there is another matter that we deem it proper we should express our views on. The verdict of the jury shows that they found that Dyer and Thompson did not contract in writing for the stock in question. Attached to the motion for a new trial in the district court are the original written subscription contracts therein alleged to have been executed by Dyer and Thompson, respectively. These contracts are attached to the motion as newly discovered evidence, and it is contended that a new trial should have been granted on account of the discovery of these contracts after the trial. We do not consider it necessary for us to pass on the question as to whether a new trial should have been granted on account of the discovery of these contracts, as the case must be reversed on the matters we have already discussed. Regardless of that matter, it is evident that on another trial these written subscription contracts will probably be in evidence, and admitting, for the purposes of this opinion, that they are genuine, they demonstrate conclusively that both Dyer and Thompson contracted in writing for the stock in question. Furthermore, these instruments demonstrate that both Dyer and Thompson were therein fully apprised of the fact that the company was not incorporated or authorized to engage in business at the time they executed these contracts. Also the evidence discloses, as shown by the statement we have made, and the statement made by the Court of Civil Appeals, that about September 14, 1920, Dyer and Thompson were elected directors of the proposed corporation and agreed for the company to use its assets and engage in business on or about such time. It is further shown that, at a meeting held on such date, at which they were both present, it was agreed that a building should be rented for the purpose of engaging in business. If Dyer and Thompson, knowing that the company had no charter, and was not authorized to engage in business, agreed for the assets of the company to be taken and used for such purposes, they agreed to a novation of the original contract which the bond was made to secure, and thereby release the surety. The subscription contracts show that they certainly knew the company had no charter and was not authorized to engage in business at the time they subscribed for the stock. To demonstrate this, we here reproduce the subscription contracts:

"Subscription Blank of the Southwestern Tablet Company of Dallas.

"In the State of Texas. Capital stock, $125,-000.00. Shares $100.00 each.

"I, G. S. Thompson, the undersigned of the County of Dallas, State of Texas, do hereby subscribe for 50 shares of the capital stock of the Southwestern Tablet Company, at the par value of $100.00 each, and hereby agree to pay 50% of such subscription cash or on demand and the remaining 50% as called for by the directors, but it is understood that the call for the remaining 50% shall not be called for until the Company is duly incorporated under the laws of Texas, the unpaid balance is to bear interest at the rate of 8% per annum until paid.

580

"It is also understood and agreed that unless all of the capital stock of said corporation is not subscribed in good faith, and by responsible parties within a reasonable time, and the Company incorporated immediately after all the capital stock is subscribed, then this subscription shall be null and void and any money paid by me shall be returned, otherwise to be in full force and effect.

"It is agreed that the amount of commission, and all other incidental expenses incident to sale of such stock shall not exceed ten per cent. of the capital stock. It is also agreed to and understood that the commission paid for sale of shares mentioned herein shall not exceed ten per cent. of the amount of this subscription.

"Witness my hand, this the 19 day of July, A. D. 1920.

"Geo. S. Thompson, Purchaser.

"W. L. Morgan, Agent. 3402 Harvard Ave., Address. City."

The contract signed by Dyer is the same as the above, except it contains his name and is signed by him.

We recommend that the judgments of the Court of Civil Appeals and the district court be both reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.