## AIRLINE MOTOR COACHES v. GREEN.
### No. 4560.

Court of Civil Appeals of Texas. Beaumont.
Jan. 20, 1949.

Rehearing Denied Feb. 9, 1949.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, and Thompson & Stripling, of Nacogdoches, for appellant.

Fulmer & Fairchild, of Nacogdoches, for appellee.

COE, Chief Justice.

This suit was brought by appellee, Buster Green, to recover for the injuries alleged to have been sustained by his wife, Lillie Mae Green, when she was riding as a passenger on one of appellant's motor coaches. Appellee relied upon the doctrine of res ipsa loquitur in his pleadings and claimed that the bus left the highway as a result of the negligence of appellant and its employees, causing the injuries complained of. Appellant alleged and contended that the sudden and unexpected breaking of a spring on the bus caused the motor coach to leave the highway, and that plaintiff's injuries and damages were the result of an unavoidable accident.

Upon trial the general issue of the negligence of appellant's bus driver was submitted to the jury and found in favor of appellee, and the jury fixed the damages at $10,000; further found that the leaving of the highway by the coach was not an unavoidable accident and refused to find from the preponderance of the evidence that the left front spring of appellant's bus broke immediately before such bus left the highway at the time and place in question and judgment was rendered for appellee for the sum of $10,000. Appellant's amended motion for a new trial was overruled and appeal has been duly perfected to this Court.

This appeal is unusual in that the only complaint made is directed to the argument of the attorneys for appellee except that complaint is made that the amount of damages awarded appellee is so excessive as to show passion and prejudice on the part of the jury.

By Points Nos. 1 and 2, appellant complains of the argument of appellee's attorney to the jury wherein he called upon the jury to follow the Golden Rule. The argument complained of being as follows:

"You will do in this case as the Golden Rule says, not try to help the plaintiff and not try to help the defendant, nor the attorneys, but simply find the facts. In other words, 'Do unto others as you would have them do unto you.' You must give the same consideration to the Negro woman that you do to all the other evidence."

To this argument appellant timely objected thereto as follows: "We object to him telling them what the law is. It is inflammatory and prejudicial and outside of what the Court says."

While appellant's Point No. 2 refers to certain excerpts of the argument made by one of the attorneys for appellee in his opening argument to the jury, as we construe the Point it only presents as error the argument of appellee's attorney in closing the argument which was as above set out. We see no error in the argument complained of. It does not appeal to the jury to put themselves in the place of the plaintiff or his wife in deciding the issue submitted to them, but on the contrary it appealed to them to deal fairly with both the plaintiff and the defendant. This character of argument was presented to our Supreme Court in the case of Rio Grande E. P. & S. F. Ry. Co. v. Dupree, Tex.Com.

App., 55 S.W.2d 522, and was there held not to be improper argument. The rule there announced is undoubtedly a just and sensible rule and we believe is controlling here. See, also, the case of Texas & N. O. Ry. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160; Liberty Mutual Ins. Co. v. Nelson, Tex.Civ.App., 174 S.W.2d 103.

By appellant's Point No. 3 it complains of an excerpt from the closing argument of appellee's attorney as follows: "Don't you imagine the reason they did not ask for an examination to have a puncture made and determine it was because they knew good and well if they did they would find it to be twice as high as it should be, as he (Dr. Nash) said, and they really would be in a spot?" To which argument the appellant timely made the following objection: "We object to that because it is an assumption that is not in the record. It is no duty on our part to make any examination, or to take any assumption one way or another. It is out of the record and inflammatory and prejudicial."

█ It appears from the record that Dr. C. C. Nash of Dallas, Texas, a brain surgeon, had made a spinal fluid pressure test on Lillie Mae Green and that this test showed the pressure to be 265 mm, approximately twice as high as it should be. Upon this test, plus his neurological examination, he reached the conclusion that Lillie Mae was suffering with a lesion of the brain. This testimony was given by Dr. Nash on the first trial of this case in October, 1947, and was reproduced at this trial from the reporter's notes by agreement of the parties. Lillie Mae Green testified that when her deposition was taken by attorneys for appellant in February, 1947, she agreed under oath to go to any doctor to be examined if appellant requested it; that appellant has never called on her to go to a doctor; that she has never refused to go and does not now refuse. None of the three doctors testifying in behalf of appellant had made a spinal fluid pressure test and, among other things, gave as their opinion that Lillie Mae Green was suffering with the menopause and was not suffering from a head injury, testifying in detail as to their treatment of appellee's wife. It also appeared that the spinal fluid pressure test was very important in the diagnosis of a brain injury. It thus appears that by agreeing to submit to an examination at the hand of a physician, if requested by appellant, appellee's wife made the means of controverting the testimony of Dr. Nash, who had testified in appellee's behalf, readily accessible to the appellant, if Dr. Nash's testimony as to her spinal fluid pressure test were not true. In this state of the record we believe that it was proper for the attorney for appellee to make the argument complained of. In 41 Tex.Jur. 784, the rule is thus announced: "It is clearly within the domain of legitimate argument to refer to the fact that certain testimony has not been controverted or denied * * *. It is proper also to draw inferences for the failure of the adverse party to introduce evidence as reasonably appears could have offered." Also, see Galveston Theatres v. Larson, Tex.Civ. App., 124 S.W.2d 937; Western Shoe Co. v. Amarillo National Bank, Tex.Civ.App., 42 S.W.2d 469; Traders & General Ins. Co. v. Peterson, Tex.Civ.App., 87 S.W.2d 322.

█ By appellant's 4th Point it complains of a portion of argument made by one of appellee's attorneys in his opening argument to the jury as follows: "Who knows about this spring transaction? This case has been tried twice in Nacogdoches and we have not been able to see the face of any of those men here," and the failure of the Court to sustain defendant's timely objection thereto, to the effect that it was out of the record and not shown that we had control of the mechanics or any of these folks. It appears from the record that on the occasion in question appellant's bus suddenly left the highway, crossed a ditch, went through a fence into a field which had been cultivated in rows, through another fence and finally coming to a stop some distance from the highway. It was appellant's contention that the left front spring of said bus suddenly broke, causing the driver to lose control of the bus and making it impossible for him to hold the same on the highway, and, therefore, the accident was unavoidable. There was also

evidence that two of appellant's mechanics came from Nacogdoches, Texas in response to a telephone call by appellant's bus driver, bringing a spring with them and that they replaced two front springs on the bus, buying the second spring in Mansfield, Louisiana where the bus was. Neither was called as a witness in the trial of this case. There was no showing that these mechanics were not in appellant's employ at the time of the trial or were otherwise unavailable to it. This argument evidently referred to appellant's two mechanics who had repaired said bus as it was they who knew about the spring transaction. It being shown that these mechanics were in the employ of the appellant at the time of the accident, it will be presumed that they were still in the employ of appellant at the time of 'the trial unless otherwise shown. See 17 Tex.Jur., pg. 255, Sec. 62. It was therefore proper for counsel to comment on the absence of such witnesses. Supporting this conclusion see Marek v. Southern Enterprises, Inc., of Texas, 128 Tex. 377, 99 S. W.2d 594; Montgomery Ward & Co. v. Levy, Tex.Civ.App., 136 S.W.2d 663. It might be contended that this argument was also a comment of the failure of appellant to produce a Mr. Garner and a Mr. Lowrey of Mansfield, Louisiana, where one of the springs was bought and the repairs made; however the objection made was too general to point out and direct the attention of the trial court as being the comment on the failure of appellant to produce these particular witnesses. The argument being proper as to appellant's mechanics, the court was justified in overruling the objection made. In addition to the foregoing, upon the objection being made, the court made the following ruling: "Take the evidence from the witness stand." This ruling seems to have been acquiesced in and no further instructions from the court were requested. Under this state of the record no reversible error is shown. Younger Bros., Inc., v. Moore, Tex.Civ.App., 135 S. W.2d 780; Rainwater v. McGrew, Tex. Civ.App., 181 S.W.2d 103.

■ By its 5th Point appellant complains of a portion of the argument of appellee's counsel in his closing argument to the jury that "You are not concerned if the defendant ever pays one penny of it," contending that said argument insinuates and is calculated to lead the jury to believe that someone other than the defendant, to-wit, an insurance company would have to pay any judgment which they rendered. The argument as made by appellee's attorney from which the excerpt in Point 5 was taken and the objection thereto are as follows:

"Now, gentlemen, regarding the issue on damages. We sue here for twenty-five thousand dollars, and I think you can sit down with a pencil and paper and with no trouble figure the damages sustained by her exceeding twenty-five thousand dollars, laying aside doctors' bills, which we didn't attempt to prove. There is enough testimony in the record to support twenty-five thousand dollars. That's a lot of money, but you are not concerned with that nor with who is going to pay it. You are not concerned with anything only what is the correct answer, how much she and her husband have been damaged. Liken it to this: Suppose somebody has a bushel of corn shelled and you are asked to find how many kernels of corn there are in that bushel. You count them one by one. You are not concerned. You have been asked to count them and are not concerned who owns the corn nor whom he is going to sell it to nor what he will get for it, but how many kernels in that bushel. That is your province. You are not concerned if the defendant ever pays one penny of it."

The court had charged the jury, "the jury is not concerned by the effects of its answers and not any judgment to be rendered." Appellant contends that this argument suggested the fact that an insurance company would have to pay any judgment entered against appellant. This idea was not conveyed by the objection made and does not seem to have been made known to the court by objection or otherwise until its amended motion for new trial was filed, which was more than a month after the conclusion of the trial. We do not agree with appellant that this argument was calculated to lead the jury to believe that someone other than appellant, to-wit, an insurance company would have to pay any judgment rendered. As

we construe the argument made, it was only an admonition to the jury to disregard the effect of their findings and to be guided solely by the evidence in arriving at the amount of damages appellee had suffered.

By appellant's 6th and final point they contend that the award of $10,000 in damages is so excessive as to show passion and prejudice on the part of the jury. We will not undertake to summarize all of the evidence bearing on the amount of damages suffered by appellee. It is true that the medical testimony offered by appellant was to the effect that appellee's wife suffered no serious or permanent injuries from the accident in question, and that in their opinion the main trouble with appellee's wife was. attributable to her passing through the menopause. On the other hand appellee's wife testified that she had gone though this period of life some two years prior to the occasion in question without any trouble; that she had always been able to do her housework, farm work and to do outside work for White people and that she earned from her farm or gardening work and in selling chickens, eggs and produce which she raised about $500 per year; that since her injuries she had been unable to do any of that kind of work; that she had suffered much pain and still suffers with her head, neck, leg, arm and shoulder as the result of her injuries; sometimes feels crazy and her head and neck hurts; that she has a sink in the top of her head which was not there before the injuries, and that while at times she feels better the pain in her side and head never leaves her. Appellee's wife was 47 years of age at the time of the trial with a life expectancy of 23.8 years and appellee was 48 years old and had a life expectancy of 22.36 years. The evidence further showed that on the occasion in question appellee's wife was unconscious for sometime as the result of the injury and that she immediately complained with her head, neck and shoulders as well as other complaints.

Dr. Nash of Dallas, Texas, who it was shown has specialized for the last 25 years of his practice in surgery of the brain and nerves, testified that in February, 1946, he examined appellee's wife and did a neurological examination and a spinal puncture; that he found a difference in the reflexes of her right leg and arm as compared with her left leg and arm; that the grip in her right hand was much weaker than the left; that she had a depression in her head which he thought was in the scalp; that he examined her on two subsequent occasions with the same findings except that on the last time her right hand was weaker than it had been, going into details with reference to the examinations made and the result thereof, and stated that his diagnosis was that she had a lesion in the left half portion of the brain due to trauma or injury; that he had ruled out other possible causes such as tumor and syphillis; that his diagnosis was based entirely on his physical findings; that he did not base it to any extent on what the patient told him; that the prospects of improvement were very little; that her trouble was due to scar tissue in the brain; that he would not recommend that she engage in the performance of manual labor or heavy household work such as washing or lifting; that any kind of exertion in a condition like that would aggravate her symptoms; that in his opinion her disability was permanent. In response to a hypothetical question he expressed the opinion that the trouble with Lillie Mae's brain was due to injury received on the occasion of September 19, 1945, when the bus left the highway.

It would unduly lengthen this opinion to undertake to set out all of the evidence of this one witness pertaining to appellee's wife's physical condition which the jury was authorized to find was the result of the injuries suffered by her on the occasion in question. Taking into consideration the devalued state of the dollar and its greatly decreased purchasing power, we are unwilling to say that the award of $10,000 as damages was so excessive as to shock the conscience of the court so as to require a remittitur or the reversal of this case. Finding no error requiring the reversal of this cause, the judgment of the trial court is affirmed.