**Alfonse MARTIN, Appellant,**

v.

**COMMERCIAL STANDARD INSURANCE COMPANY, Appellee.**

No. 6497.

Court of Civil Appeals of Texas.
Beaumont.

Oct. 26, 1961.

Rehearing Denied Nov. 15, 1961.

Ernest Sample, Beaumont, for appellant.

Keith, Mehaffy, McNicholas & Weber, Beaumont, for appellee.

STEPHENSON, Justice.

This suit was brought by Alfonse Martin, appellant, against J. C. Dishman, G. A. Dishman and H. E. Dishman, d/b/a Dishman Brothers, appellees, for personal injuries sustained when appellant fell or was thrown from a tractor. Appellant was employed as a farm laborer by appellees and received an injury while engaged in his usual work. The trial court instructed a verdict for appellees at the close of appellant's evidence.

Appellees contended in the trial court and again in this court: that appellant did not establish the fact that the accident was caused by a defect in the tractor; that there was no duty on the part of appellees, as a matter of law, to inspect the tractor under the circumstances of this case. After careful consideration of the record, we are of the opinion the evidence was sufficient to raise ultimate issues which should have been submitted to the jury.

It is appellant's theory of the case that the accident was caused because of a defect in the hydraulic system of the tractor, permitting the slip, or blade attached to the tractor to bounce up and down and sink into the ground causing appellant to be

thrown from the tractor. The testimony of appellant shows that he was employed by appellees to work on their farm, and among other duties, to drive a tractor. On the occasion in question he was driving the tractor furnished to him by appellees. When he reached some rough ground, all at once the tractor began acting up with him, and began bouncing more and more, and pulled off of the ground and threw him off at which time he sustained the injuries complained of. Appellant testified he saw a gouged out place in the ground about six feet from where he fell in the same line he had been traveling. That after he was thrown from the tractor, it continued across the field, gashing the levee and picking up a slip of dirt. The tractor crossed about twenty levees. Extensive repairs had to be made to the tractor following the accident. Among other items, a leak in the hydraulic system was repaired. An expert witness, called by appellant, testified: that the hydraulic system of the tractor was designed to keep the slip at a uniform height with reference to the rear wheels; that if a leak occurred in the hydraulic system, the system would become soft and spongy, and the slip would bounce up and down.

While the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident, and the circumstances in proof attending it, may be such as to lead reasonably to the belief that without negligence it would not have occurred. Washington v. Missouri, K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764. This rule of law is discussed fully in Bolstad v. Egleson, Tex.Civ.App., 326 S.W.2d 506, 517: "Defendant says its motion for an instructed verdict should have been granted because the evidence shows no more than the occurrence of an accident which of course raises no presumption of negligence on the part of anyone * * * (citing cases). These cases correctly state the law, but we do not consider them applicable to the facts of this case. Negligence, like any other ultimate fact, may be established by circumstantial

evidence. * * * The true rule in negligence cases, as we apprehend the [rule] to be, is that where the circumstances are such that reasonable minds may logically draw either an inference of actionable negligence or the absence of it, the issue is one of fact for the jury and not one of law for the Court." The facts established by appellant, mentioned above, the way the tractor acted, bouncing up and down and sinking into the ground, the gouged out place behind the tractor, the leak found in the hydraulic system following the accident and the testimony of the expert in reference to the hydraulic system, all raised an issue to be submitted to the jury as to whether the accident was caused by a defect in such system. As it is said in Burlington-Rock Island Ry. Co. v. Ellison, 140 Tex. 353, 360, 167 S.W.2d 723: "The plaintiff was not required to exclude the probability that the accident might have occurred in some other way. To so hold would impose upon her the burden of establishing her case beyond a reasonable doubt. She was only required to convince the jury by fair preponderance of the evidence that the accident resulted from the negligence of the defendant."

Appellee also contends: there was no breach of duty on their part, established by the appellant; that the tractor had been purchased new less than two months before the time of the accident, and there was nothing to put appellees on notice that the tractor should be inspected for the purpose of ascertaining any defect. In the case of Sternenberg v. Marshall, Tex.Civ.App., 257 S.W.2d 312, 316, it is written: " 'There is no rule of law that imposes upon the master the duty to discover latent defects, where there is nothing to indicate that any such defect exists * * *.' It is also the law that the master has a nondelegable duty to use reasonable care in furnishing a servant with tools in such condition that he will not be endangered by ordinarily careful operation and use of them and the master must likewise exercise reasonable care in maintaining such tools in such condition.

* * * The diligence which will amount to ordinary care must be measured by the circumstances of the case. * * * Insofar as this point relates to the equality of opportunity which Marshall had with appellant to know the true condition of the burner it has been held that where, as here, the defective condition is hidden and unknown both to the master and servant the servant has not assumed the risk incident to the performance of his duties with the defective tool or appliance since it is the duty of the master to make inspections." Citing Peck v. Peck, 99 Tex. 10, 87 S.W. 248.

It is true the tractor was less than two months old, and had given no previous indication of being defective. Yet, the appellant proved the appellee J. C. Dishman had an owner's manual in his possession, furnished him by Oil City Tractor, Inc., the company from whom this tractor was purchased, and that he was familiar with that portion of the manual in reference to the 50 hour inspection. This manual contained the following:

(1) "Fifty hour inspection—after you have operated your tractor for a period of fifty hours, see your Ford Tractor and Implement Dealer. At this time he will perform the factory recommended fifty hour inspection without charge, except for lubricants.

(2) "Hydraulic system—after the first fifty hours and after every six hundred hours operation, change the oil in the hydraulic system.

(3) "After fifty hours of operation—after fifty hours of operation see your Ford Tractor and Implement Dealer. He will perform all necessary checks and adjustments in the fifty hour service and inspection, authorized by your service policy." Johnny Walker, of Oil City Tractor, Inc., testified: "There was a fifty hour check that the factory recommends, in which we check the hydraulic to see if it has control, and also recommend that the oil be changed in the hydraulic, at the cus-

tomer's expense." The expert witness called by appellant testified the purpose of the inspection of the hydraulic system at the end of fifty hours of operation was to see if there was any leakage or see if it was operating properly, and if there was any loose shavings that would probably drain out with the oil, and to tighten up all loose bolts and screws. This witness also testified that if the parts are loose the proper amount of pressure would not exist, and if shavings got in the oil the valve would wear down and the fluid would by-pass. The appellant testified he had driven the tractor about 100 hours. Appellees brought out the fact that the owner's manual defined engine hours as the number of hours worked based on an average engine speed of 1,515 revolutions per minute, and that engine speeds below 1,515 r. p. m. accumulates more slowly than clock hours, and those above 1,515 r. p. m. accumulate more rapidly. We think all of this testimony raised an issue which should have been submitted to the jury to determine whether appellees as ordinary prudent persons under these circumstances would have had the tractor inspected before the accident, together with a proper issue on proximate cause.

We are of the opinion this case is controlled by Gammage v. Gamer Co., Comm. of Appeals, 209 S.W. 389, 390, in which it is written as follows:

"It was defendant's duty to use ordinary care to furnish the plaintiff with safe machinery with which to do his work, and to use the same degree of care to keep it in a reasonably safe condition. In discharging this duty it was incumbent on the defendant to make such inspections of the machine and use such precaution in the matter of keeping it oiled and in good running condition, as the nature of the machine indicated to be proper. * * * Where the evidence, as in this case raises the question as to whether the machine was ever inspected, or more than casually observed from time to time by the defendant, the question of whether the defect had

existed for a sufficient length of time to be discovered upon a proper inspection does not arise, and in such cases it is a question for the jury as to whether the defendant is free from negligence. * * * The evidence as a whole raised the issues of whether the machine was defective, and whether, if the defendant had used reasonable diligence to inspect the machine or ordinary care to keep it in good running condition, the plaintiff would have been injured. These issues were for the jury, and, together with other, were submitted under a proper general charge. The verdict was for the plaintiff and is supported by evidence."

It is ordered the judgment of the trial court be reversed and the cause remanded for trial.