COMMERCIAL STANDARD INS. CO. et al.,
Petitioners,

v.

Alfonse MARTIN, Respondent.

No. A–8766.

Supreme Court of Texas.

Oct. 24, 1962.

As Amended on Denial of Rehearing
Jan. 16, 1963.

Keith, Mehaffy, McNicholas & Weber, Dewey J. Gonsoulin, Beaumont, for petitioners.

Sample & Walker, Beaumont, for respondent.

WALKER, Justice.

Alfonse Martin, respondent, brought this suit against J. C. Dishman et al., petitioners, to recover for personal injuries sustained by respondent when he fell or was thrown from a tractor while in the course of his employment by petitioners as a farm laborer. Commercial Standard Insurance Company was originally named as one of the defendants, but the suit was discontinued as to that company when the first amended original petition was filed. The trial court instructed a verdict for petitioners at the close of respondent's evidence. Having concluded that there are issues of fact as to whether the accident was proximately caused by the negligence of petitioners, the Court of Civil Appeals reversed and remanded the cause for trial. 350 S.W.2d 664. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

The accident occurred while respondent was going back to the field after eating dinner. He was driving a Ford tractor which petitioners had purchased new about seven weeks before. Attached to the tractor was a slip or blade used for moving dirt and which was raised and lowered by an hydraulic-lift mechanism controlled by hand levers. After closing a gate through which he had driven, plaintiff got back on the tractor and proceeded along a road through the field. At a point where the road was rough and rutted, the tractor began bouncing up and down and pulling off the ground. Respondent was thrown off and injured, and the unattended tractor continued across

the field, jumping irrigation ditches and rice levees, until it finally stopped.

Extensive repairs were made to the tractor after the accident. Among other items, a leak in the hydraulic system was repaired, and it is respondent's theory that this leak caused the accident. He testified that the blade was raised when he closed the gate. According to the expert testimony which he offered, the blade would have remained in that position in the absence of a defect in the hydraulic system unless it was lowered with the controls. If it had been lowered with the controls and the hydraulic system was operating properly, the blade would have stayed down. A leak in the system would cause the pressure to fall and permit the blade to bounce up and down. Respondent testified that there was a gash in the earth about six paces back from the place where he fell, and that the blade was bouncing up and down as the tractor went across the field after the accident.

At the time petitioners purchased the tractor they received from the dealer an owner's manual published by the manufacturer. It was there recommended that the tractor be returned to the dealer after fifty hours of operation for the free inspection, checks and adjustments authorized by the owner's service policy. At another place in the manual the owner was advised that the oil in the hydraulic system should be changed after the first fifty hours of operation and every six hundred hours thereafter. The dealer from whom petitioners purchased the tractor testified that the hydraulic system is checked in the course of the fifty-hour inspection to ascertain whether it has control. Another witness stated that loose bolts and gaskets are tightened during the inspection, and that any small shavings which have worked loose in the hydraulic system will probably drain out when the oil is changed.

We agree with respondent that the evidence will support an inference that the accident was caused by a leak in the hydraulic system. Although petitioners argue

to the contrary, we assume without deciding that the trier of fact might properly conclude from the evidence: (1) that the tractor had been operated for more than fifty hours within the meaning of the manual, and (2) that the petitioners in the exercise of ordinary care should have foreseen that a failure to have the tractor inspected as recommended in the manual might result in injury to the operator. Petitioners are not insurers of respondent's safety, however, and they are not legally responsible for his injuries unless their negligence was a proximate cause of the accident.

Respondent cites Gammage v. Gamer Co., Tex.Com.App., 209 S.W. 389, in support of the holding of the Court of Civil Appeals. There the plaintiff was injured when a machine on which he was working started unexpectedly. The machine could be set in motion by shifting a moving belt from a loose pulley to a tight pulley. It was alleged that the lever used for shifting the belt was out of repair and not properly secured so as to hold the belt on the loose pulley, that the loose pulley was worn and would wobble and carry the belt on to the fixed pulley, and that the loose pulley by friction and negligent failure to oil would become heated and tighten on the shaft, thereby starting the machine. The opinion of the Commission of Appeals states that the plaintiff introduced testimony "pointing out the three possible defects in detail, any one of which could have caused the machine to start, and the existence, discovery, and prevention of all of which depended upon the degree of care used by the defendant in inspecting, repairing and oiling the machine." A jury verdict for the plaintiff was upheld because the court concluded that the character of the accident, and the circumstances in proof attending it, were such as to lead reasonably to the belief that without negligence it would not have occurred. Although it was said that res ipsa loquitur had no application, the statement of such doctrine made by Chief Justice Erle in Scott v. London & St. Katherine Docks Co., 3 H. & C. 596, 159 E.R. 665, was

**230** 

quoted in the opinion as the principle underlying the liability of the defendant.

Other courts have applied res ipsa loquitur in cases involving the sudden and unexplained starting of machinery, Ross v. Double Shoals Cotton Mills, 140 N.C. 115, 52 S.E. 121, 1 L.R.A.,N.S., 298; Chiuccariello v. Campbell, 210 Mass. 532, 96 N.E. 1101, 44 L.R.A.,N.S., 1050, Ann.Cas.1912D, 510, but it is unnecessary for us to determine at this time whether the Gammage case was correctly decided. The accident in the present case is not one which in the light of ordinary experience gives rise to an inference that it was caused by petitioners' negligence.

The court in the Gammage case also said that where the evidence raises an issue as to whether the machine was ever inspected, the question of whether the defect had existed for a sufficient length of time to be discovered upon a proper inspection does not arise, and that in such cases it is a question of fact for the jury as to whether the defendant is free from negligence. That is ordinarily true in so far as the negligence issue is concerned, but the nature of the defect and the time it has existed are usually material considerations in determining whether it would have been discovered and corrected if a proper inspection had been made.

 We are assuming foreseeability, and the narrow question is whether there is any evidence to support the conclusion that the failure to have the tractor inspected was a cause in fact. As pointed out by the Court of Civil Appeals, the tractor was less than two months old and had given no previous indication of being defective. The record is completely silent as to which part of the hydraulic system was found to be leaking after the accident. A leak was repaired, but we find nothing to indicate the nature of the repairs that were made. There was no testimony that would enable the trier of fact to determine what caused the leak or how long it might have existed. The existence of the defect at the time of the accident must itself rest upon an inference, and the evidence does not establish any fact or circumstance from which it can fairly be inferred that the leak would have been prevented or discovered and repaired if the inspection had been made. It is a matter of pure speculation as to whether the leak was caused by a loose bolt which probably would have been tightened during the inspection, by a latent defect in the metal wall of the oil container which developed into a crack while the tractor was being driven back to the field just prior to the accident, or by some other defect. Since there is no evidence to support a finding that the accident was proximately caused by petitioners' failure to have the inspection made, the trial court properly instructed a verdict in their favor.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.