**J. WEINGARTEN, INC., Appellant,**

**v.**

**Shirley M. HIGGINBOTHAM, Appellee.**

**No. 7696.**

Court of Civil Appeals of Texas, Beaumont.

May 1, 1975.

Rehearing Denied May 22, 1975.

Marlin Thompson, Orange, for appellant.

Benckenstein & Norvell, Beaumont, for appellee.

STEPHENSON, Justice.

Plaintiff, Shirley Higginbotham, brought this suit against her employer, J. Weingarten, Inc., to recover damages for injuries she received while working in the course of her employment. Defendant is a nonsubscriber under the Workmen's Compensation Law and this suit is authorized under Vernon's Tex.Rev.Civ.Stat.Ann. art. 8306, § 1, ¶ 4 (1967). Trial was by jury and judgment rendered for plaintiff upon the jury findings. The parties will be referred to here as they were in the trial court.

The general rules relating to the rights, duties and obligations of the parties in this situation were stated by us in J. Weingarten, Inc. v. Sandefer, 490 S.W.2d 941 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.), and will not be restated here. The two rules set forth there, together with citations which are applicable, are the continuing nondelegable duty of an employer to furnish his employees a reasonably safe place to work and safe and suitable appliances so the employees may carry on their work with reasonable safety. Also, in order to recover, plaintiff had to plead and prove actionable negligence on the part of defendant which proximately caused her injuries.

The jury found defendant negligent in failing to provide plaintiff a ladder or other means to remove the bacon from a high stack, and in stacking the bacon too high, and that each act of negligence was a proximate cause of the occurrence in question. Defendant attacks each of those findings as having no support in the evidence and in having insufficient support in the evidence and as being contrary to the great weight and preponderance of the evidence. We pass upon the no-evidence points by considering only the favorable evidence as to such findings, and we pass upon the remaining evidentiary points by considering the entire record. We proceed to review the evidence favorable to the

jury findings in first passing upon the no-evidence points.

Plaintiff gave the following testimony: She first went to work for defendant in 1959, as a meat wrapper, which is the same type of work she was doing when she received this injury on the 27th day of January, 1971. She had worked for defendant at several different stores, most of that time. She had been working at the store where she received this injury since April, 1970. The duties of a meat wrapper generally are to wrap the meat, weigh it, display it, and take care of the cured meat case which included bacon. She had to run to get all of her work done on time. There were four employees in the meat department: Bobby McIntyre, the meat manager; Harry Hall, a butcher; and Bobby Miller, an apprentice butcher. Only plaintiff and Harry Hall were on duty the day of the injury. Plaintiff arrived at work about 7:30 that morning. Plaintiff's duties that morning were to pull the meat out of the case that was out of date, for the butcher to redo or do away with; fill the cured meat case and wrap the hamburger and put it out before the store opened at 9 o'clock. Harry Hall was cutting the red meat. Plaintiff had taken care of the red meat, that is, carried it back, weighed it and brought it back out. She went to the chicken cooler to get the cured meat. She had brought a shopping cart to carry the bacon in. The chicken cooler is a separate room by itself about 8 x 10 in size. It is not a freezer although it is kept at a low temperature. The floor is cement with a drain in the center, and is always damp. The poultry is covered with crushed ice which continues to melt and run off on the floor. There are two shelves in the cooler, one from four to six inches off of the floor and the second about five and a half feet from the floor. Plaintiff got some bacon off of the lower shelf and put it in the cart, and then began to reach for a box of Wilson bacon stacked on the upper shelf. This bacon was stacked three boxes high, each box weighing thirty pounds, and being about ten inches high and about two feet long. Plaintiff was trying to reach the box on top and first put her foot on the cart and it moved. She then put one foot on the lower shelf with the other on the floor, and both feet slipped causing plaintiff to fall, striking the cart and receive the injuries complained of. The box of bacon she had been reaching for then fell on her. There was no ladder in the cooler.

Bobby McIntyre gave the following testimony: He had been employed as the meat manager at the same store at which plaintiff was working at the time of her injury. That plaintiff was employed as a weigher and wrapper and part of her responsibilities was to stock the display case with meat. He was not working the day she was injured. He estimated the cooler to be about 6 x 8, with shelves at six inches and six feet above the floor. That it was not plaintiff's duty to stack the bacon in the cooler. He estimated the boxes of Wilson bacon to be about ten inches high and weigh twenty-four pounds. The floor of the cooler was generally wet. Plaintiff was not violating any rules in trying to get the box of bacon down, and he was sure it had been done several times. He had seen bacon stacked three boxes high on the top shelf lots of times. There was no ladder in the cooler and no ladder in the meat department. There was a ladder sixteen to twenty feet long in the back storage, but it would have been impossible to get it into the cooler. Plaintiff had to work pretty fast to get her work done "because they expect us to have our case up by the time the store opened."

Phillip Dean Cook gave this testimony: He had worked for defendant in the same store in which plaintiff was injured. At the time he worked there, there was no ladder available for use in the chicken cooler. There was a long ladder in the back of the store somewhere, but it could not be used to stand on in the cooler.

The foregoing testimony supports the jury findings that defendant was negligent in failing to provide plaintiff a ladder or other means to remove the bacon from a high stack, and in stacking the bacon too high, and that each ground of negligence was the proximate cause of the occurrence in question. The no-evidence points are overruled. Defendant's evidence contradicting that of plaintiff did no more than raise questions of fact for the jury to determine, which it did, favorably to plaintiff. The remaining evidentiary points as to those jury findings are overruled.

Defendant has points of error attacking the jury award of $10,000 for past medical expenses. On oral argument, counsel for plaintiff conceded that the proof would not support that amount, and that the plaintiff is limited to a recovery of $5,960.66, in accordance with the evidence. However, plaintiff's petition alleges the past medical expenses to be $500, and such pleadings were never amended. The rule is well established that a judgment for money damages in excess of the amount pleaded is erroneous, even though the jury awarded a larger amount. Socony-Vacuum Oil Co. v. Aderhold, 150 Tex. 292, 240 S.W.2d 751 (1951); Kleiner v. Eubank, 358 S.W.2d 902 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.); Williams v. General Motors Corporation, 501 S.W.2d 930 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.).

Defendant has points of error complaining about the award of $5,000 for future medical expenses. Counsel for plaintiff conceded on oral argument that there is no proof in the record that the cost of such expenses was reasonable, and that it was error for the trial court to allow such award in its judgment.

Defendant also has a point of error complaining about the refusal of the trial court to give it credit in the judgment for the sums of $833.00 paid to plaintiff and $2,861.85 paid for plaintiff's medical expenses. Defendant's pleadings included allegations as to such payments and asked for credit for such payments. It was then stipulated into our record that such payments had been made. Defendant is entitled to a credit of $833 on the general damages allowed, and the amount of credit due for past medical expenses paid is sufficient to offset the balance plaintiff could have collected under the pleadings.

Defendant's point of error that the general damages are excessive is overruled. The evidence in this record, including surgery upon her back three times, supports the jury finding of $20,000.

The judgment of the trial court is reformed to allow plaintiff to recover the total sum of $19,167, with interest from the date of the original judgment, November 14, 1974. The costs of this appeal are divided one-half to each party.

Reformed and affirmed.