Benford HARRISON, Individually and
d/b/a Benford Harrison
Timber, Appellant,

v.

John Edd HARRISON, Appellee.

No. 1230.

Court of Civil Appeals of Texas,
Tyler.

March 13, 1980.

Vernon R. Berry, Zeleskey, Cornelius, Rogers, Berry & Hallmark, Lufkin, Gus E. Meriwether, Sallas & Meriwether, Crockett, for appellant.

H. L. Morgan, Morgan, Dudensing & Tullis, Crockett, for appellee.

SUMMERS, Chief Justice.

This is a personal injury case.

Appellee John Edd Harrison initiated this suit seeking recovery for personal injuries sustained in an accident which occurred on September 20, 1973. Appellee, plaintiff below, was injured by a log which fell from his loaded log truck at the Herndon Chalmers sawmill in Trinity, Texas. Appellee filed suit against his brother Benford Harrison, individually and doing business under the assumed name of Benford Harrison Timber, alleging that he was an employee of appellant; that he was injured in the course of such employment; that appellant was eligible to be, but had not elected to become, a subscriber under the workman's compensation laws of Texas; that appellant owed appellee certain nondelegable duties, among which were to furnish reasonably safe and suitable machinery, implements and appliances to carry on his work; and that appellant's failure to fulfill such duties was a proximate cause of the accident and appellee's injuries and damages.

The case was tried to a jury which, in response to special issues submitted, found that appellant failed to furnish reasonably safe and suitable machinery, implements and appliances to carry on the work; that such was a proximate cause of the occurrence in question; that appellee was an employee of appellant at the time of the occurrence in question; and that the injury to appellee was sustained in the course of employment for appellant. In accordance with the jury's verdict and in conformity with appellee's pleadings, the trial court rendered judgment against appellant in the amount of $100,000.00.

We affirm.

From this adverse judgment, appellant predicates this appeal upon nine points of error. Points of error Nos. 1 through 3 complain of the jury's finding that appellant Benford Harrison failed to furnish appellee with reasonably safe and suitable

machinery, implements and appliances because there is no evidence or insufficient evidence to support said finding, or the finding is against the great weight and preponderance of the evidence. Points of error Nos. 4 through 6 assert the same evidentiary complaints concerning the jury's finding that such failure was a proximate cause of the occurrence in question. Appellant contends through these six points that the trial court erred in failing to render judgment for appellant non obstante veredicto or, in the alternative, that said judgment of the trial court should be reversed. Appellant further complains that the trial court erred in overruling appellant's objection to the trial court's charge because the trial court failed to submit an issue as to whether at the time of the occurrence in question appellee John Edd Harrison was a "special" employee of Arnold Starr (Point No. 7); in overruling appellant's objection because the trial court refused to give appellant's Requested Instruction No. 1, to the effect that an employee can be in the general employment of one and at the same time be a special employee of another (Point No. 8); and finally, Point of Error No. 9, in overruling appellant's motion for mistrial arising from repeated inferences in the opening and closing arguments by appellee's counsel which invited the jury to speculate as to whether appellant was covered by a policy of insurance.

Appellant is in the business of hauling logs and pulpwood and has been for many years. John Ed Harrison, appellee, worked for his brother and did whatever appellant told him to do, whether it might be using a saw, driving a truck or anything else connected with Benford Harrison's business. Both men were experienced loggers. At the time of the occurrence in question, and for sometime prior thereto, appellant had three or more regular employees; he knew that he was eligible to be a subscriber under the workman's compensation laws of the state of Texas but had elected not to become a subscriber.

On or about September 1, 1972, Benford and John Edd Harrison entered into an oral understanding between them, whereby for appellant's tax purposes and other records John Edd, appellee herein, would be considered a contractor for Benford Harrison. However, as far as the working relationship and arrangement was concerned, no change had occurred. Benford still exercised complete control over the details of the work performed by his brother John Edd. John Edd did not haul logs on his own; Benford made the arrangements for the hauling of logs; and John Edd did the hauling. The record shows that this was the procedure at the time the accident occurred; that Benford made a deal with Arnold Starr to haul his logs to the Herndon Chalmers mill; and that John Edd was doing the hauling with his truck and Benford's trailer, following orders given to him by his brother Benford.

On the day of the occurrence in question, John Edd was in the process of hauling his second load of Arnold Starr's timber. Starr was riding with John Edd, because his truck had broken down, and he had no other way to get home. When they arrived at the mill about 5:30 p.m., there was nobody from the mill to help them unload. Larry Caddenhead, another hauler, had just brought a load of logs to the mill, and all three agreed to unload the two trailers. In order to unload the logs at the Herndon Chalmers mill, one person, operating a fork lift, would pull up against the side of the logs on the trailer, while another would pull the chain off that holds the logs on the trailer during transit and unlatch the standards on the driver's side of the trailer so the logs would fall. Then the fork lift operator would back up from where he was positioned on the passenger side of the trailer holding the logs in place, thereby causing the logs to fall off. Any logs that do not fall are pushed off using the fork lift. This procedure was utilized in unloading the Caddenhead trailer without incident and is the normal and accepted procedure of the industry at this particular mill.

Arnold Starr drove Larry Caddenhead's trailer away from the area after it was unloaded. John Edd then drove his trailer in to be unloaded. Larry Caddenhead oper-

ated the forklift, and John Edd was to take the chain off and trip the standards. At this point, Arnold Starr was just a spectator. John Edd got the chain off the logs while Caddenhead got onto the forklift and maneuvered it up against the logs. Caddenhead was not satisfied with the way the lift was holding the logs; he told John Edd that he wanted to reposition and backed away from the trailer. When he did so, the load of logs leaned back toward him and then rocked back the other way toward John Edd Harrison, causing a log to fall from the top of the pile. As it fell, it hit appellee on the head and shoulder before it landed on his left leg. The log caused a severe compound fracture of the lower leg along with deep lacerations around the ankle and heel.

Appellant, by his first six (6) points of error, complains of Special Issues Nos. 1 and 1A, in that there was no evidence or factually insufficient evidence to support the jury's findings regarding said special issues, or that such findings were against the great weight and preponderance of the evidence.

In determining a "no evidence" point, which is a question of law, we consider only that evidence, if any, and the reasonable inferences therefrom, which viewed in its most favorable light, supports the jury finding and we must reject all evidence and inferences which are contrary to the finding. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Biggers v. Continental Bus Systems*, 159 Tex. 351, 303 S.W.2d 359, 363 (1957); *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914).

In determining an "insufficient evidence" point, or a point alleging the verdict or finding to be against the overwhelming weight and preponderance of the evidence, said points being a question of fact, we consider and weigh all the evidence in the case to determine whether the evidence is factually insufficient to support a finding of a vital fact or the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust and that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, supra at 823; *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951). Special Issues 1 and 1A, together with the jury answers thereto, read as follows:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that on the occasion in question, Benford Harrison failed to furnish to John Edd Harrison reasonably safe and suitable machinery, implements and appliances to carry on his work?

Answer 'Yes' or 'No.'

Answer: 'Yes.'

If you have answered Special Issue No. 1 'Yes' and only in that event, then answer:

### SPECIAL ISSUE NO. 1A

Do you find from a preponderance of the evidence that such failure was a proximate cause of the accident?

Answer 'Yes' or 'No.'

Answer 'Yes.' "

As stated above, appellant although eligible was not a subscriber under the workman's compensation laws of Texas. Under these circumstances in an employer-employee suit, the common law defenses of contributory negligence, assumption of the risk and fellow servant negligence are not available to the employer. Tex.Rev.Civ. Stat.Ann. art. 8306, secs. 1 and 4 (1967).[1] It

---

1. Article 8306, sec. 4 provides:

"Sec. 4. Employés whose employers are not at the time of the injury subscribers to said association, and the representatives and beneficiaries of deceased employés who at the time of the injury were working for non-subscribing employers cannot participate in the benefits of said insurance association, but they shall be entitled to bring suit and may recover judgment against such employers, or any of them, for all damages, sustained by reason of any personal injury received in the course of employment or by reason of death resulting from such injury, and the provisions of section 1 of this law shall be applied in all such actions."

Article 8306, sec. 1 provides:

"Sec. 1. In an action to recover damages for personal injuries sustained by an employé in

would still be incumbent upon the injured employee, in order to recover for his injuries, for him to allege and prove negligence on the part of his employer proximately causing the injuries. *Sears, Roebuck & Company v. Robinson*, 154 Tex. 336, 280 S.W.2d 238, 239 (1955); *J. Weingarten, Inc. v. Higginbotham*, 523 S.W.2d 450, 451 (Tex. Civ.App.-Beaumont 1975, writ ref'd n. r. e.); *Potter v. Garner*, 407 S.W.2d 537, 541 (Tex. Civ.App.-Tyler 1966, writ ref'd n. r. e.).

"Proximate cause" was defined by the trial court in its charge to the jury. Neither party complains on appeal of the definition given. In substance, proximate cause was defined as a cause, in a natural and continuous sequence, which produces an event and without which the event would not have occurred; and to be a proximate cause, it should be such that it could have been foreseen by a person of ordinary prudence that the event, or some similar event, would result from such a cause as a natural and probable consequence.

■ "Negligence" was defined by the trial court as a failure to use ordinary care; a failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. The three elements of actionable negligence, (1) a legal duty owed by one person to another, (2) a breach of that duty and (3) damage proximately resulting from such breach, must exist before there can be any recovery. The duty need not be one imposed by contract between the parties but may be one implied by law from the circumstances and relationship of the parties. *Frontier Theatres, Inc. v. Brown*, 362 S.W.2d 360, 369 (Tex.Civ.App.-El Paso 1962) rev'd on other grounds 369 S.W.2d 299 (Tex.1963). See also Prosser, Law of Torts, sec. 30 (4th ed. 1971).

■ An employer is under a duty to provide his employees with a reasonably safe place to work and to furnish the necessary appliances for carrying on the work requested of the employees in a proper condition and with reasonable safety. *Prewitt v. Waller*, 423 S.W.2d 641, 644 (Tex.Civ.App.-Dallas 1967, no writ); *Potter v. Garner*, supra at 541; *White v. Duncan*, 323 S.W.2d 621, 622 (Tex.Civ.App.-Amarillo 1959, no writ).

■ In addition, an employer has a nondelegable duty to exercise reasonable care in maintaining the tools furnished by him and used in the furtherance of his business in such a condition as to not endanger one who uses said tools in an ordinary manner. *Martin v. Commercial Standard Insurance Company*, 350 S.W.2d 664, 666 (Tex.Civ. App.-Beaumont 1961) rev'd on other grounds 363 S.W.2d 228 (Tex.1962); *Sternenberg v. Marshall*, 257 S.W.2d 312, 316 (Tex.Civ.App.-Austin 1953, writ ref'd n. r. e.).

There was ample testimony regarding both the employment relationship between John Edd Harrison and Benford Harrison, as well as the condition of the equipment used by John Edd the day of the occurrence in question. John Edd testified that he had worked for his brother Benford several years prior to the accident and was paid by the cord on the amount of pulpwood cut. The two brothers then entered into an oral agreement to change their working relationship, but such change was made solely for tax purposes. There was no change so far as the work John Edd was to do, and he still took his orders from Benford. As a part of the change Benford sold John Edd a truck, but Benford continued to own the trailer. John Edd would be responsible for any minor repairs needed on the trailer; any major repairs needed on the trailer

the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense:

1. That the employé was guilty of contributory negligence.

2. That the injury was caused by the negligence of a fellow employé.

3. That the employé had assumed the risk of the injury incident to his employment; but such employer may defend in such action on the ground that the injury was caused by the willful intention of the emploé to bring about the injury, or was so caused while the employé was in a state of intoxication . . . ."

would be taken care of by Benford. John Edd was to be in charge of some hands, but such was in appearance only. Benford still dictated to John Edd who was to be hired and fired, most of these hands having been on Benford's payroll before the "change" in the brother's working relationship. There was no real change in personnel. Benford also leased his brother a skidder. Benford made all the decisions concerning the workers and what each man was to do on a given day, including the men in John Edd's crew. On the day in question, Benford instructed John Edd to haul logs belonging to Arnold Starr.

Arnold Starr testified that he was thirty-five (35) years old, had been in the logging business before he finished school and ever since. He had known the Harrison brothers all his life. At the time of the occurrence which is the basis of this lawsuit, Mr. Starr knew John Edd was working for Benford. He made a deal with Benford Harrison to haul some logs because his (Starr's) truck was broken down. Benford had hauled Mr. Starr's logs for three or four days, but realized he wouldn't be able to haul all the logs Starr had cut; so Benford asked Starr if it would be alright if he (Benford) could tell John Edd to come over and help. Arnold Starr readily agreed, since he was on a deadline to get the logs on the trucks and to the mill. Although Arnold Starr rode to the mill with John Edd, it was Starr's testimony that he never exercised any control whatsoever over how John Edd was to drive or unload the trailer. He gave no orders to John Edd Harrison. All Starr's dealings concerning the hauling of the logs were with Benford, not John Edd. The agreement with regard to payment for the hauling was also with Benford. Starr further testified that he had never known John Edd to haul any logs for anybody except his brother, Benford Harrison. John Edd received a check from Starr for the hauling he had done, but Arnold Starr testified that his father, who handled the bookkeeping for his business, issued the check to John Edd when in fact it should have been issued to Benford. He reiterated that the deal to haul the logs was made with Benford, and

that is what he told his father; that he had no agreement at all with John Edd to haul logs.

The appellant Benford Harrison testified that he owns and operates Benford Harrison Timber and has done so for quite some time prior to the accident in question. He hired his brother to work for him and told John Edd what to do. He also recalled the oral agreement made between the two about September, 1972, in which for paper purposes John Edd was called a contractor. Benford further testified that as far as the working arrangement was concerned, no change was effectuated. He still exercised complete control over the details of the work John Edd performed for him, just as before said agreement. The workers that went over to John Edd were still under the control of Benford. It was Benford's understanding that during the time this agreement was in effect before the accident, John Edd could not go out and "rustle up" a contract of his own to haul for anyone else. Benford further recalled that he made the agreement with Arnold Starr to haul logs and instructed John Edd to haul them. On the day John Edd was injured at the Herndon Chalmers mill, he was following orders given to him by his brother Benford. The agreement with Starr was that Starr was to pay Benford for all hauling that was done. There was no other arrangement for payment. Lastly, Benford agreed that any major repairs needed on the trailer that John Edd was using were his (Benford's) responsibility.

Regarding the condition of the trailer, Larry Caddenhead, an experienced logger who drove the forklift at the mill on the day of the accident, testified he volunteered to help John Edd Harrison unload the logs in John Edd's trailer because the workers at the mill had all left for the day. He further explained that after he drove the lift up against the logs on the trailer, he was not satisfied with the position of the lift; so he backed the fork lift away from the trailer. As this was done, the load of logs leaned towards him (the passenger side) and then rocked back the other way, causing a

log to roll off. Caddenhead believed that the load of logs on John Edd's trailer "was just a normal load of logs." He also noticed that the standards on the trailer were bent out; that the logs were not loaded above the standards on the sides of the load, but rather the load was "mounded" and higher in the middle than at the sides. It was also his opinion and testimony that "a good trailer don't rock that bad."

Arnold Starr also testified as to the condition of the trailer. He stated that he saw that the standards were leaning out, and even though the logs were loaded above the standards in the middle of the load pile (as is the customary practice in the industry), a straight standard has a better chance of catching or stopping a log that is rolling off the top of the load than a bent standard. The reason for this is that since the load is not above the standards on the sides, there would be 4 to 5 inches of standard sticking above the logs, and chances are good that a rolling log would be caught. Starr also stated that on the ride to the mill, when the truck and trailer John Edd was driving "hit a low place in the road, it would rock." Based on his experience in the logging industry, Arnold Starr testified that such an occurrence means "that the truck is wore out or the trailer is in bad shape, the springs is bad . . ." He further testified that when Larry Caddenhead backed up to reposition the fork lift, it was his impression that the trailer rocked "way over too far" and such was the main reason (the rocking) the log rolled off. When asked to explain to the jury just what he saw, Mr. Starr recalled that:

"Well, I noticed when the lift was put against the truck and the pressure was applied to hold the logs that the whole load shifted too far over. I would say the bushings were wore out and the springs were weak on the trailer which would let it automatically rock too far. If the springs had been good and the trailer had been in good shape it would have set up straight but it wouldn't have rocked over."

Benford Harrison testified that he knew the trailer was in bad shape; that the standards were bent and that the springs were weak. He also stated that looking back on what had happened, with the method of unloading used at the Herndon Chalmers mill and the condition of the trailer, it was foreseeable that the trailer would rock.

John Edd Harrison stated that one familiar with the equipment used in the logging industry could tell the springs on Benford's trailer were weak when a load was put on the trailer. That was the reason they didn't load that particular trailer as heavily as they would have had it been in better condition.

■ The well-established law of this State is that proximate cause includes two essential elements: (1) foreseeability and (2) cause in fact or causal relation. *Texas and Pacific Railway Company v. McCleery*, 418 S.W.2d 494, 496 (Tex.1967); *Baumler v. Hazelwood*, 162 Tex. 361, 347 S.W.2d 560, 564 (1961); *Hopson v. Gulf Oil Corporation*, 150 Tex. 1, 237 S.W.2d 352, 355 (1951); *Lopez v. Lone Star Beer, Inc. of Corpus Christi*, 465 S.W.2d 774, 785 (Tex.Civ.App.-Corpus Christi 1971, writ ref'd n. r. e.); *Thomas v. Beckering*, 391 S.W.2d 771, 775 (Tex.Civ.App.-Tyler 1965, writ ref'd n. r. e.). For a result to be legally foreseeable, all that is required is that the injury be of such a general character as might reasonably have been anticipated, and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen. *Motsenbocker v. Wyatt*, 369 S.W.2d 319, 323 (Tex.1963); *Delta Air Lines, Inc. v. Gibson*, 550 S.W.2d 310, 313 (Tex.Civ.App.-El Paso 1977, writ ref'd n. r. e.); *Southwestern Bell Telephone Company v. Hertz Equipment Rental Company*, 533 S.W.2d 853, 857 (Tex.Civ.App.-Fort Worth 1976, writ ref'd n. r. e.). Negligent conduct complained of is, in law, a cause in fact if the injury would not have occurred "but for" the act or omission of the appellant; that is, the result would not have occurred without the act or omission. *Biggers v. Continental Bus Systems*, supra, 303

S.W.2d at 365; *Hopson v. Gulf Oil Corporation*, 150 Tex. 1, 237 S.W.2d 352, 355 (1951).

We are of the opinion that there is evidence of probative value directly supporting the jury's findings in regard to Special Issues 1 and 1A. Evidence of probative force is testimony of substance and relevant consequence, not vague or uncertain, but having the quality of proof to induce conviction of truth. The evidence required in Texas to prove negligence and proximate cause may be established by circumstantial as well as direct evidence. *Birmingham v. Gulf Oil Corporation*, 516 S.W.2d 914, 917 (Tex.1974); *Morsch v. Metzger*, 520 S.W.2d 564, 569 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n. r. e.).

We are also mindful of the rule that the mere fact the log fell off the trailer of appellant is not evidence that the accident was proximately caused by the actions or omissions of the appellant. *Houston National Bank v. Adair*, 146 Tex. 367, 207 S.W.2d 374, 375 (1948); *Bowen v. East Texas Hospital Foundation*, 400 S.W.2d 843, 848 (Tex.Civ.App.-Tyler 1966, writ ref'd n. r. e.). In the case at bar there was positive and direct testimony regarding the circumstances surrounding the accident. This testimony, outlined above, consisted of what was observed by eyewitnesses to the accident, as well as opinions as to the condition of the trailer by witnesses with years of experience in the logging industry.

The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence presented to it. Its findings may not be disregarded if the record discloses any evidence of probative value in support thereof. It is the exclusive judge of controverted issues of fact raised by the evidence, of the credibility of the witnesses and the weight to be given their testimony. *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273, 276 (1958); *Carr v. Gregory*, 472 S.W.2d 819, 824 (Tex.Civ.App.-Corpus Christi 1971, no writ). The trial court has the authority to disregard jury findings if the verdict is contrary to

the conclusive evidence. *LeMaster v. Fort Worth Transit Co.*, 138 Tex. 512, 160 S.W.2d 224, 226 (1942); *Lechner v. Kelley*, 467 S.W.2d 652, 654 (Tex.Civ.App.-Tyler 1971, writ ref'd n. r. e.).

After carefully reviewing all the evidence in the record, we are of the opinion that said evidence amply supports the jury's findings in answer to Special Issues Nos. 1 and 1A and that neither of such findings is against the great weight and preponderance of the evidence; that is, at the time of the accident in question John Edd Harrison was an employee of his brother Benford Harrison and as such Benford owed a duty to furnish John Edd with safe and suitable equipment; that he failed to furnish John Edd such equipment because the trailer that was used by John Edd was in need of major repairs for which Benford Harrison was responsible; and that such failure to furnish said equipment in a proper and safe condition for the work to be done was a proximate cause of the accident. We also believe that Benford Harrison should have foreseen or anticipated that by having John Edd Harrison use a trailer with bad springs and bent standards, an accident with the logs could occur. Appellant's points of error Nos. 1 through 6 are overruled.

In points of error Nos. 7 and 8 appellant contends that the trial court erred in overruling appellant's objection to the court's charge because of the court's failure to submit an issue as to whether at the time of the occurrence in question appellee was a "special" employee of Arnold Starr, and in overruling appellant's objection because of the failure of the trial court to instruct the jury on "special" employee by refusing to give appellant's Requested Instruction 1, to the effect that an employee can be in the general employment of one and at the same time be a special employee of another. We disagree.

It is well settled that a general employee of one employer may become the borrowed servant, or "special" employee of another in performing acts on behalf of the latter. Restatement (Second) of Agency,

Sec. 227 (1958). As the Texas Supreme Court stated in *Producers Chemical Co. v. McKay*, 366 S.W.2d 220, 225 (Tex.1963):

> "Whether general employees of one employer have, in a given situation, become special or borrowed employees of another employer is often a difficult question, particularly when employees are furnished with machinery by their general employer to accomplish part of a project or contract undertaken by another. Solution [to] the question rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer . . ."

And, as the Supreme Court of the United States put it in *Standard Oil Co. v. Anderson*, 212 U.S. 215, 221–222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909):

> "To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking."

As can be readily seen, one of the basic elements, in the absence of a contractual provision, is which employer has the right to control the manner and details of the employee's work. *Dodd v. Twin City Fire Insurance Co.*, 545 S.W.2d 766, 768 (Tex. 1977); *J. A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327, 330 (Tex.1968).

█ The evidence, in our view, clearly demonstrates that John Edd Harrison, at the time of the accident, was an employee of his brother Benford and was under his control. Arnold Starr testified he never gave any orders or suggestions to John Edd concerning the unloading of the logs, and the only reason why Starr was at the mill with John Edd was because his own truck was disabled, and John Edd was to give him a ride home after the unloading. Arnold Starr also testified that John Edd shouldn't have received any payment for the hauling he did because the agreement was made between Benford and Starr, and any payment to John Edd was an oversight by Starr's bookkeeper. We find no evidence in the record to support the contention that John Edd Harrison was a special employee of Arnold Starr. There was no agreement or contract expressly ceding right of control of John Edd Harrison in hauling the logs to Arnold Starr. Starr neither exercised control over John Edd in the details of the work, nor is there any evidence whatsoever that he had a right to do so. There is also *no evidence that Arnold Starr could have replaced John Edd Harrison with another driver/hauler of his own choosing*. Benford Harrison's contract to haul logs for Starr was of a short term nature, and Benford assigned part of such hauling to his employee and brother John Edd. There is no evidence of any kind of control to raise the issue that right of control of John Edd Harrison in the manner of performing his work had been transferred from Benford Harrison to Arnold Starr. We hold that the trial court did not err in refusing to submit the issue to the jury. *Producers Chemical Co. v. McKay*, supra at 226.

█ Furthermore, issues to be submitted to the jury are those raised by the written pleadings and the evidence in the case. *Johnson v. Karam*, 466 S.W.2d 806, 811 (Tex.Civ.App.-El Paso 1971, writ ref'd n. r. e.); *Bailey v. Whaples*, 435 S.W.2d 626, 627–28 (Tex.Civ.App.-Waco 1971, writ ref'd n. r. e.); Rule 277, T.R.C.P. In our opinion the issue of "special" employee or borrowed servant, in this case, is an issue relating to defenses by way of avoidance, and as such should be affirmatively set forth in the

answer of appellant. Rule 94, T.R.C.P. This defense, however, was not set forth in appellant's pleadings, nor was it raised by the evidence. Therefore, the matter was not properly before the court and said defense was not entitled to consideration in submitting the case to the jury. Rule 279, T.R.C.P. Appellant's seventh point of error is overruled.

█ Regarding appellant's Requested Instruction No. 1, such instruction also deals with the issue of John Edd Harrison being the "special" employee of Arnold Starr. Rule 277, T.R.C.P., requires that the court "shall submit such explanatory instructions and definitions as shall be proper." An instruction is "proper" if it finds support in any evidence and the inferences to be drawn therefrom, and if it might be of some aid or assistance to the jury in answering the issues submitted. *Thomas v. Oil & Gas Building, Inc.*, 582 S.W.2d 873, 882 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n. r. e.); *First State Bank & Trust Co. of Edinburg v. George*, 519 S.W.2d 198 (Tex.Civ.App.-Corpus Christi 1974, writ ref'd n. r. e.). Since the issue was not submitted by the trial court, it follows an instruction based on such issue should not be submitted either. Neither the issue nor the instruction has support in the evidence, and we believe the instruction therefore would not aid the jury in any way. Appellant's eighth point of error is overruled.

Appellant, in his ninth and final point of error, alleges the trial court erred in overruling defendant's motion for mistrial because of the repeated inferences in the closing argument of appellee's counsel inviting the jury to speculate as to whether appellant was covered by a policy of insurance. We reject this contention.

Appellee's counsel, in his closing argument to the jury, stated:

"Now, next we come to Special Issue Number 3, which is money damages . . You shouldn't be swayed in sympathy in favor of John Edd Harrison because he's got a broken foot. Certainly you're not— certainly you're not. You're not supposed to be swayed by any sympathy for

Benford Harrison either. The judge tells you that you shall not consider what effect your answers shall have on any judgment to be entered herein. You shouldn't consider whether anybody is ever going to get a dime out of this case somewhere down the line because your conduct—the judge will enter a judgment, we hope, based on the answers you make to this issues, but that's up to the judge to enter a judgment. As to whether he enters a judgment in any amount or against whom or whether it's ever paid or who pays it or anything else is not supposed to be a part of your consideration. You're supposed to answer these questions just like you do all the rest of them regardless of whether John Edd ever gets a quarter or not, or regardless of when he does, or regardless of from where or anything else . . .."

Counsel further argues:

"Well, I ask you to regard carefully what Benford Harrison said about this thing. As I told you there are some things that a lawyer can't tell you and the judge can't tell you. I told you that you're going to wonder, since these boys ain't got no dispute between each other what are we doing up here. And I'll bet you do wonder about it. And I wish I could tell you, but I can't . . .."

Counsel for appellant made no objection to any portion of appellee's closing arguments. After the jury retired to begin its deliberation, counsel for appellant made his motion for mistrial.

█ In order for a judgment to be reversed because of argument of counsel, two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. *Aultman v. Dallas Railway and Terminal Co.*, 152 Tex. 509, 260 S.W.2d 596, 599 (1953); *Texas Employers Insurance Association v. Loesch*, 538 S.W.2d 435, 441 (Tex.Civ.App.-Waco 1976, writ ref'd n. r. e.); *Twin City Fire Insurance Co. v. King*,

510 S.W.2d 370, 373 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ ref'd n. r. e.).

■ Similar arguments were made by counsel and complained of in *Benevides v. Peche*, 460 S.W.2d 207, 212 (Tex.Civ.App.-San Antonio 1970, writ ref'd n. r. e.); *Renegar v. Cramer*, 354 S.W.2d 663, 665 (Tex. Civ.App.-Austin 1962, writ ref'd n. r. e.); and *Airline Motor Coaches v. Green*, 217 S.W.2d 70, 73 (Tex.Civ.App.-Beaumont 1949, writ ref'd n. r. e.). The arguments in those cases were held to be proper, and it is our opinion that when the comments in the case at bar are considered in proper context, we do not find them to be improper. In any event, such argument falls short of reversible error. Rule 434, T.R.C.P.; *Texas Sand Company v. Shield*, 381 S.W.2d 48, 58 (Tex.1964); *Aultman v. Dallas Railway and Terminal Co.*, supra at 599; *Benevides v. Peche*, supra at 212.

Appellant, in his argument, relies primarily upon *Griffith v. Casteel*, 313 S.W.2d 149 (Tex.Civ.App.-Houston 1958, writ ref'd n. r. e.). In that case the court of civil appeals held the statement of appellee's counsel in the presence of the jury that "the defendant is not being asked to pay any money," placed before the jury the extraneous information that appellant was protected by insurance, and was reversible error.

There was no statement to the jury here of import similar to the one in *Griffith*. We believe our fact situation and the facts in *Griffith* are distinguishable, and we accordingly overrule appellant's ninth point of error.

There being no reversible error, we affirm the judgment of the trial court.

Affirmed.