FELIPE BERNAL ET UX v. MRS. WALLACE SEITT ET AL

No. A-6740. Decided May 21, 1958.
Rehearing overruled June 11, 1958.
(313 S.W. 2d Series 520)

· *Snodgrass and Smith and Frank W. Rose, Jr.,* of San Angelo, for petitioners.

The Court of Civil Appeals erred in holding that there was no evidence of probative force to sustain the jury's findings of gross negligence under Article 6701b, Texas Civil Statute. McAfee v. Travis Gas Corp., 137 Texas 314, 153 S.W. 2d 442; Burt v. Lochaesen, 151 Texas 289, 249 S.W. 2d 194; Kirkpatrick v. Neal, 153 S.W. 519, error refused for want of merit.

. *B. W. Smith,* of San Angelo, *Strausburger, Price, Kelton, Miller & Martin* and *Royal H. Brin, Jr.,* all of Dallas, for respondent.

In reply to petitioners' point of error cited Glassman v. Feldman, 106 S.W. 2d 721; Napier v. Mooneyham, 94 S.W. 2d 564, writ of error dismissed; Scott v. Gardner, 106 S.W. 2d 1109, writ of error dismissed.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This suit for damages by our petitioners, Bernal and wife, as surviving parents of 18-year old Esau Bernal, is a "guest statute" [Article 6701b, Vernon's Texas Civ. Stat.] action against the owner, and the estate of the deceased driver, of the passenger

automobile in which Esau was killed as the result of a more or less "head-on" collision with a northbound truck on a curve of highway 277, about fifteen miles north of Del Rio, on the night of April 21, 1955, the passenger car being headed south on a pleasure jaunt at the time.

The principal questions presented to us are whether the jury findings of gross negligence on the part of the driver, Jost, are supported by evidence and whether, as a matter of law, the suit is not defeated by the conduct of the deceased Bernal in failing to abandon the automobile when he could have done so at a stop shortly before the accident. Other questions include that of imputability of the gross negligence, if any, of Jost, to the respondent-defendant car owner, Ritter, who was in the car and at whose request Jost was driving.

The trial court, on the verdict and evidence, held for the petitioners-plaintiff against both respondents-defendant, but the Austin Court of Civil Appeals reversed and rendered for the latter on the sole ground of "no evidence" of gross negligence of Jost, which admittedly was a prerequisite to liability. 309 S.W. 2d 504. The court accordingly did not pass on the remaining assignments of the respondents-defendant.

The relevant facts, which are either conclusively established or which the jury might reasonably have believed to be true from the evidence, are as follows:

The objection of the trip was a pleasure visit to Villa Acuna, Mexico, from Sonora, Texas, where the occupants, including one Lozano, lived. The respondent-defendant car owner, Ritter, was to and did pay for the gasoline used on the way down and Jost was to pay for that used coming back. Bernal and Lozano were admittedly guests. The party left Sonora in the late afternoon, with Ritter driving, but a few miles out, stopped, and Jost took over the wheel, at the express request of Ritter, who said he was tired and thereafter occupied the front seat to the right of Jost, while Bernal and Lozano sat respectively on the left and right sides of the rear seat, the parties continuing in their respective places until the collision occurred, some seventy miles farther along.

After the point where Jost began driving, the road, although paved and with a center stripe and warning signs with advisory speed figures at the curves, was rather dangerous for high-speed driving, having only two lanes, a high center and numerous

curves, of which the highest advisory speed, according to the advisory speed markers, was forty-five miles per hour. The road was described in the proof as "an old hump, ridgeback road".

Notwithstanding the nature of the road, Jost, who, like Ritter, was quite familiar with it, and was by occupation a truck driver, and an "excellent" one with numerous "safety awards", proceeded to drive at a rate of from sixty-five to seventy miles per hour and, on one occasion, ran slightly off of the road on a curve, although without further mishap at the time. Lozano was watching the speedometer and, at one or more times, warned Jost about his speed and asked him to let Lozano take the wheel, which Jost refused to do.

The above events evidently transpired before, and continued until, the party reached a point some fifteen miles north of Del Rio, when they all got out of the car for a few minutes, it being then dark and the area around them evidently open country. Neither young Bernal nor any of the others made an effort to abandon the party at this point, although Bernal was a strongly built high school football player and no doubt could have eventually made his way safely into Del Rio on foot or by catching a ride in some other car that might pass. Whether he had funds to look after himself alone and other such questions that might have affected his decision to remain with the party were not brought out by the proof. In any case, the entire group re-entered the car and proceeded toward Del Rio, with Jost still at the wheel.

Thereafter Jost again proceeded to drive from sixty-five to seventy miles per hour and Lozano again asked him to yield the wheel to Lozano, but without result. Bernal made no protest nor asked to be allowed to alight.

The collision occurred just a few miles following the last stop and within a curve bending to the right of the Ritter automobile. The curve was marked by the usual type of Highway Department warning sign with an advisory speed figure of forty-five miles per hour, but is described in the evidence as "sharp". The lights of the car were on and properly functioning, and the curve warning sign was close enough to Jost's lane of travel as to be plainly visible under the circumstances. Just prior to the collision the truck was approaching from the opposite direction and accordingly on the outer lane of the curve, its lights being plainly visible. The road was dry and the weather clear, as had been the case from the start of the trip. With

Lozano protesting about the speed, Jost went into the curve at his same sixty-five to seventy miles per hour rate, got off of his own lane and into the truck's lane and struck the left rear portion of the truck with the left front of the automobile, which went into and under the truck, killing both Jost and young Bernal, who were on the impact side.

■ We will deal first with the holding of the Court below that there was no evidence to support the findings of gross negligence on the part of the driver Jost, this being the sole ground on which the trial court judgment for the petitioners-plaintiff was reversed, although evidently it was not the primary ground of appeal therefrom by the respondents-defendant. The theory below was that no one of the several particular acts or omissions which the jury found Mr. Jost to have committed—high and dangerous rate of speed, failure to keep a proper lookout, failure to have the car under control, failure to heed the warning of Lozano to slow down for the curve and failure to reduce speed at the curve—amounts to more than ordinary negligence, although the respondents-defendant necessarily admit that each did amount to that much, and that there was evidence of each having occurred.

Conceding that, in the ordinary case, the view taken by the court below would be well taken, we yet consider that, on the instant record, the findings of gross negligence are sustained by the evidence under the authority of Burt v. Lochausen, 151 Texas 289, 249 S.W. 2d 194, and Kirkpatrick v. Neal, Texas Civ. App., 153 S.W. 2d 519, wr. of error refused, "want of merit". Indeed, we regard the instant facts as stronger for gross negligence than those of Burt v. Lochausen, in that here we have several circumstances, absent there, which positively point toward conscious indifference to the safety of others, that is to say, persistence, after repeated warnings, in excessive speed over a known difficult road and further such persistence at a marked curve after dark with the consequent increase of danger from the lights of the oncoming truck.

■ Obviously every instance of gross negligence includes one of ordinary negligence; and here we have circumstances beyond mere speed, failure to keep control and so on, from which the jury might not unreasonably draw the inference of conscious indifference. The undoubted skill and experience of the driver cuts both ways. Although he had reason for self-confidence, as distinguished from callousness, he also had reason to appreciate the danger and to know that even the most skillful drivers have accidents.

It will serve no useful purpose to debate Rogers v. Blake, 150 Texas 373, 240 S.W. 2d 1001, and Burt v. Lochausen, supra, again. The latter is the more recent of the two and is more like the instant case than is Rogers v. Blake.

■ The principal ground of defense of the respondents-defendant in the Court of Civil Appeals and here is that, although appropriate defensive issues were not submitted as to the effect of the undoubted failure of the deceased Bernal to abandon the party when the car was stopped just prior to the collision, nevertheless his continuing with the party barred recovery, as a matter of law, on the theory of contributory negligence or voluntary self-exposure to risk. Schiller v. Rice, 151 Texas 116, 246 S.W. 2d 607, and Sargent v. Williams, 152 Texas 413, 258 S.W. 2d 787. We do not find this position well taken, although possibly an appropriate jury finding for the respondents-defendant might have been sustained.

In both of the cited cases the danger was definitely more obvious and serious from the outlook of the passenger or prospective passenger, and in the former the passenger's chance to abandon the party was definitely more favorable, than was the case here. The difference between the Sargent case, in which two early "teen-age" girls voluntarily went on a highway ride with a thirteen-year old boy, whom they already knew or should have known to be a reckless driver and not to have a driver's license and, on the other hand, the instant case of an eighteen-year old football player, who refrains from quitting a party of older men, at night and at a point fifteen miles out in the open country and seventy-five miles or more from home, may be a difference of mere degree, but the degree is substantial. It is one thing simply to pass up an invitation in the first instance when one knows it to be risky. It is quite another to do what it is argued that Bernal should have done. There is no necessary inconsistency in saying, on the one hand, that there was evidence of the driver doing negligent things with a consciously indifferent state of mind, and, on the other hand, that, viewing the matter from the standpoint of foresight rather than hindsight, young Bernal need not *necessarily* have abandoned the car under all the circumstances.

On behalf of the respondent-defendant Ritter, who owned the car and was riding on the front seat beside the driver, the judgment of the Court of Civil Appeals is said to be supportable on the further ground raised by Ritter as appellant in that court,

that he cannot be held liable for negligence of the driver that is gross, rather than ordinary. We must reject this contention also.

■ No jury issues were submitted in this connection, but Ritter's ownership of the car is beyond doubt, and the other relevant facts are undisputed in the evidence, to wit, that Jost was driving at Ritter's express request, that Ritter had said he was tired, that he was asleep during all or most of the journey, including the time at and just preceding the accident, and that the journey was one of mutual pleasure, with Ritter to pay for the gasoline used in one direction and Jost to pay for it in the other. No decisions of our own are cited that bear squarely on the point.

Assuming what may well be the case, that there could be no recovery of *exemplary damages* against one in Ritter's position (none were awarded), it yet does not follow that Ritter may not be liable for *compensatory* damages for the gross negligence of the driver. Exemplary damages for gross negligence are awarded by way of civil punishment of—as distinguished from compensation by—a party who does harm with a callous state of mind. But the matter of charging a principal with compensatory damages for the gross negligence of an agent is simply one of how far the ancient rule of *respondeat superior* is to apply. The law is correctly stated in Lusk v. Onstott, Texas Civ. App., 178 S.W. 2d 549, 553, as follows:

" * * * A principal is usually liable for injuries inflicted upon third persons or their property by the malicious or wanton conduct of his agent when committed within the scope of the agency, but where one seeks to ascribe to the principal acts of malice or wantonness of his agent in order to recover exemplary damages, the evidence must show that the principal had knowledge of, or participated in, the malice or that he ratified and adopted the acts of the agent which constituted the alleged malice. Commonwealth of Massachusetts v. Davis, 140 Texas 398, 168 S.W. 2d 216; Taylor v. Esparza, Texas Civ. App., 8 S.W. 2d 288."

Certainly if Jost had been hired by Ritter to drive the car, it would appear rather extraordinary to free the latter from all liability by reason of the guest statute and his own personal nonparticipation in the conduct of Jost. And yet, under the instant facts, Jost was as much an agent as if he were hired, Ritter having asked him to do the driving.

528

In so far as the judgment of the trial court runs against the respondent widow of the driver, Jost (she has since married again and appears in the record as Mrs. Seitt), the judgment of the Court of Civil Appeals is sought to be sustained on the further ground that, while she was sued as community survivor and her liability accordingly limited by the trial court judgment to such nonexempt community property as might be in her hands, the only proof as to such property being that there was a community homestead. (Our general description of this suit at the beginning of this opinion as including a claim against "the estate" of Mr. Jost was merely by way of abbreviation.) This contention also we must overrule. The judgment of the trial court clearly protects the rights of the surviving wife and was preferable to a form of judgment that would likewise protect her rights but might develop to be unfair to the plaintiffs. We perceive no reason of justice or positive law that is violated by the kind of judgment here rendered.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered May 21, 1958.

Rehearing overruled June 11, 1958.