Alice **BENEVIDES**, Appellant,

v.

Ruby **PECHE**, Appellee.

No. 14894.

Court of Civil Appeals of Texas, San Antonio.

Oct. 21, 1970.

Rehearing Denied Dec. 2, 1970.

208

Huson, Clark & Thornton, San Antonio, for appellant.

Pat Maloney, San Antonio, for appellee.

BARROW, Chief Justice.

A guest statute case.[1] Appellee, a guest passenger, recovered judgment of $29,-400.00 after a jury trial in her suit against appellant, the owner-operator of the vehicle in which appellee was riding when it struck a utility pole on the north curb of Hildebrand Avenue in the City of San Antonio. The jury found that appellant was grossly negligent in driving at an excessive rate of speed and in swerving her vehicle in and out of traffic in overtaking and passing other vehicles going in the same direction. The jury also found that appellant's failure to keep a proper lookout was not gross negligence and that although appellee failed to make a protest as to the manner in which the automobile was being driven, such failure was not negligence. The parties will be referred to as in the trial court.

---

1. Vernon's Annotated Civil Statutes, art. 6701b.

Defendant has timely perfected this appeal and asserts five assignments of error: 1. The jury findings of gross negligence are against the overwhelming preponderance of the evidence. 2. The trial court erred in overruling appellant's objections to the submission of Special Issues 9–12 relating to the "swerving of said vehicle". 3. Plaintiff was guilty of negligence as a matter of law in failing to protest. 4. The trial court erred in refusing to submit contributory negligence issues relating to plaintiff's lookout. 5. Plaintiff's attorneys made improper and prejudicial comments in their arguments.

Defendant's first point complaining of the factual insufficiency of the evidence to support the findings of gross negligence requires us to examine the entire statement of facts and if sustained to order a new trial. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965). The accident occurred about 11:45 AM, August 14, 1967, on a clear and sunshiny day. Defendant and plaintiff were employed in the same department of the Oblate Philippine Mission Bureau which was located less than a mile from the point of the accident. Six witnesses testified relative to the accident. All witnesses, except the investigating officer and a pedestrian eyewitness named Gilbert Tellez, worked at the Mission Bureau, which employs about 100 employees. The four young ladies who testified occupied three cars which, although proceeding independently in a westerly direction, were in the immediate area enroute to lunch at one of several restaurants located several blocks to the west of where the accident occurred.

No diagrams or photographs were introduced into evidence and the record is not conclusive as to where the accident actually occurred. Hildebrand Avenue is a major east-west thoroughfare, which is four lanes wide east of the IH–10 overpass but narrows west of the overpass. A traffic control light is located under or near the intersection of Hildebrand and the overpass. The record is not clear as to the distance from the traffic light to the telephone pole struck by defendant's car, with testimony varying from 200 feet to 3 blocks. The cars driven by Mrs. Charo and Miss Fierros and perhaps an unidentified third car were required to stop for a red light. No contention is made that defendant ran a red light, although the evidence is conflicting as to whether or not she stopped at the traffic control light. Defendant testified that she did stop for a red light; however, both appellee and Miss Fierros testified that defendant's car did not stop for said control. Nevertheless, after all cars were west of the light, defendant passed Miss Fierros' car in the right lane, then passed Mrs. Charo's car in the left lane, and while attempting to pull back to the right lane, because the roadway narrowed, defendant's car went out of control and laid down 45 feet of skid marks before striking a telephone pole on the north curb. Plaintiff was thrown through the windshield and sustained serious injury, and defendant's car sustained total damage.

Under the Texas Guest Statute, there can be no liability on the part of the defendant "unless such accident shall have been intentional" on her part, "or caused by [her] heedlessness or [her] reckless disregard of the rights of others". Here these two friends, who worked together and had double-dated previously, were proceeding to lunch when the accident occurred. Although plaintiff testified that defendant took her hands off the steering wheel just before the car hit the pole, there was no pleading, no requested issue, or even serious contention that such accident was intentional on the part of the defendant. So we must determine if the findings of gross negligence are factually supported in this record.

It has been held that gross negligence within this statute may be shown by a continued or persistent course of conduct evidencing an entire want of care resulting from a realization of danger to the rights of others and a conscious indifference to such rights, safety and welfare of the per-

sons affected. Bernal v. Seitt, 158 Tex. 521, 313 S.W.2d 520 (1958); Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952); Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571 (1945). It may also be established by evidence of an act of such quality or kind of conduct as to show that the driver was consciously indifferent to the rights or welfare of his passenger as well as others. Fancher v. Cadwell, 159 Tex. 8, 314 S.W.2d 820 (1958); Hanks v. LaQuey, 425 S.W.2d 396 (Tex.Civ.App.— Austin 1968, writ ref'd n. r. e.); Adams v. McHam, 310 S.W.2d 145 (Tex.Civ.App.— Amarillo 1958, writ ref'd n. r. e.).

In Fancher v. Cadwell, supra, the Court said: "Our examination of the authorities in this jurisdiction on the question discloses that the courts have been primarily concerned with the quality or kind of conduct established by the evidence in each given case and have adhered to the rule that whether conduct is so far negligent or wanton, reckless or willfully improper as to render one liable under the guest statute depends upon the combination of circumstances present at the particular time and place." In Blashfield, Automobile Law and Practice, Third Edition, Vol. 5, Sec. 213.21, it is said: "Ordinarily, no one or two acts or omissions on the part of the host, no one or two factors from among the conditions then and there present, can be segregated and arbitrarily characterized as necessarily constituting a breach by the host of his duty. However, some one particular act or omission is the central feature of every such traffic accident; although it is not, of itself, determining, it is still of critical significance."

The central feature of the accident in question was the excessive rate of speed at which defendant drove and operated her automobile just prior to the accident. Although the speed limit was 30mph, there is substantial evidence that defendant was going over 50mph just before the accident. Mrs. Charo estimated the speed at 50mph, and in response to a question by defendant's counsel, said the speed could have been as much as 60mph. Miss Fierros testified defendant's speed was 50–60mph. Plaintiff testified the car was going about 55–60mph, and that when she looked at the speedometer just before collision, the car was going 55mph. Mr. Tellez testified that his attention was attracted to defendant's car by the sound of it being gunned, and he estimated her speed at 35–50mph. Defendant testified that she was very familiar with this street and knew it was dangerous, in fact suicidal, to travel at 60mph on this congested street. She denied any excessive speed, although she conceded that she speeded up to pass the cars and might have been going 35mph. However, she was unable to account for her car going out of control when she tried to cut back to the right lane after passing the Charo car. Furthermore, the physical evidence justifies a jury conclusion that defendant was operating her car at a high rate of speed.

It has been stated many times that in the ordinary case, speed alone will not support a finding of gross negligence. See Bernal v. Seitt, supra; Bowman v. Puckett, supra; Webb v. Karsten, 308 S.W.2d 114 (Tex. Civ.App.—Houston 1957, no writ); 6 ALR 3d 769, 773, Annotation—Guest Statute— Speed. The record before us will not support a finding of a continued or persistent course of conduct in regard to excessive speed as seen in Bernal v. Seitt, supra. Thus, the crucial question before us is whether defendant's speed, when considered with the finding of swerving in and out of traffic on this congested thoroughfare, together with the known fact that the roadway narrowed in this area, will support the jury's finding of gross negligence.

We have examined the entire record in the light of the foregoing rules, and although unquestionably the issue is very close, particularly when compared with aggravated facts as presented in Hanks v. LaQuey, supra, we cannot say that the jury findings of gross negligence are so against the great weight and preponderance of the evidence as to be manifestly unjust. We therefore overrule defendant's first point.

■ Defendant complains in her second point of the overruling of her objections to Special Issues Nos. 9–12[2] whereby the jury found that she swerved in and out of traffic because: (a) there is no pleading to support such submission; (b) and (c) there is no evidence or insufficient evidence to support an affirmative finding to such issue; (d) the court failed to define "swerving her vehicle in and out of traffic in overtaking and passing other vehicles going in the same direction". Plaintiff alleged among other acts, that defendant was negligent "in turning her car in and out of traffic and passing other vehicles when same could not be done with safety". As stated heretofore, defendant concedes that she passed Miss Fierros in the right lane and Mrs. Charo in the left lane and was turning back to the right lane when her car went out of control. Such pleading and evidence supports the giving of Issues 9–12. Nor do we think it was necessary to give a definition in connection with Issue No. 9. In any event, no suggested definition was tendered by defendant as required by Rule 279, Texas Rules of Civil Procedure. Defendant's second point is overruled.

■ Defendant alleged that plaintiff was contributorily negligent in not making an outcry. In her testimony, defendant denied that plaintiff made any such protest or even that there was any reason for same. On the other hand, plaintiff testified that defendant drove very recklessly from the time she turned onto Hildebrand Avenue and that plaintiff protested and asked defendant to slow down or let plaintiff out of the car. The jury found, however, that plaintiff did not protest, but that such failure was not negligence. It is settled law that contributory negligence is a defense even to the gross negligence required for a recovery under the guest statute. Parrott v. Garcia, 436 S.W.2d 897 (Tex.1969); Sargent v. Williams, 152 Tex. 413, 258 S.W.2d 787 (1953); Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952). We cannot say from the record in this case that plaintiff was contributorily negligent as a matter of law in riding with defendant or in not protesting her manner of driving. The parties had only traveled a distance of less than a mile with no opportunity for plaintiff to leave the car. It is significant also that plaintiff did not know how to drive a car. This record does not establish contributory negligence as a matter of law, and defendant's third point is without merit.

■ Defendant pleaded that plaintiff failed to keep a proper lookout for her own safety and complains by her fourth point of the trial court's failure to submit contributory negligence issues relative thereto. In Dudley v. Whatley, 400 S.W.2d 773 [Tex. Civ.App.—Houston (1st) 1966, writ ref'd n. r. e.] the lookout duty of a passenger was stated as follows: "Ordinarily a passenger, not being in charge of the opera-

2. "*Question No. 9:* Do you find from a preponderance of the evidence that immediately prior to the accident the defendant Alice Benevides, in operating and driving her vehicle was swerving her vehicle in and out of traffic in overtaking and passing other vehicles going in the same direction?"

"*Question No. 10:* [Conditioned on Number 9] Do you find from a preponderance of the evidence that the action of the defendant in operating and driving her vehicle by swerving her vehicle in and out of traffic in overtaking and passing other vehicles going in the same direction, if she did do so, was negligence?"

"*Question No. 11:* [Conditioned on Number 9] Do you find from a preponderance of the evidence that the action of the defendant in operating and driving her vehicle by swerving her vehicle in and out of traffic in overtaking and passing other vehicles going in the same direction, if she did do so, was gross negligence?"

"*Question No. 12:* [Conditioned on Number 11] Do you find from a preponderance of the evidence that the action of the defendant in operating and driving her vehicle by swerving her vehicle in and out of traffic in overtaking and passing other vehicles going in the same direction, if she did do so, was a proximate cause of the accident?"

tion of the automobile, is not required constantly to keep a lookout. He may rely on the driver to keep watch unless he knows from past experience or from the manner in which the car is being driven on the particular trip, that thé driver is likely to be inattentive or careless. In addition if the passenger knows that [at] a particular point there will be a peculiar danger, which he has no reason to believe that the driver, if unaided, will perceive, he may be guilty of negligence, if he does not keep himself in a position to call the danger to the attention of the driver." See also Edmiston v. Texas & N. O. R. R. Co., 135 Tex. 67, 138 S.W.2d 526 (1940); Ellis v. Guinn, 323 S.W.2d 381 (Tex.Civ.App.—El Paso 1959, writ ref'd n. r. e.).

Here defendant was very familiar with the area, and there is nothing in the record to indicate that plaintiff was not keeping a proper lookout or that a failure to do so could have contributed to cause the accident. The trial court did not err in failing to submit the requested issues regarding plaintiff's lookout.

■ Under her fifth point defendant complains of improper and prejudicial jury argument. During opening argument one of plaintiff's attorneys stated that they had divided the charge, the first 12 issues being plaintiff's issues and 13–22 being defendant's issues. Defendant objected and the jury was promptly instructed not to consider the arguments of attorneys as evidence. During the closing argument, plaintiff's attorney stated: "Judge Onion doesn't tell you who pays the damages, how they are paid, or when they are paid; he simply asks you what are they." Defendant's objection was overruled, but no further argument in this vein was pursued.

We have read all the arguments made in this case and when the comments complained of are considered in proper context, we do not find them improper. In any event, such argument falls far short of reversible error. Rule 434, T.R.C.P.; Texas Sand Company v. Shield, 381 S.W.2d 48

(Tex.1964); Aultman v. Dallas Ry. & Term. Co., 152 Tex. 509, 260 S.W.2d 596 (1953); H. E. Butt Grocery Company v. Quick, 442 S.W.2d 798 (Tex.Civ.App.— San Antonio 1969, writ ref'd n. r. e.). Accordingly, defendant's fifth point is overruled.

The judgment of the trial court is affirmed.