**Robert OGDEN, Appellant,**

v.

**De Anne WILSON, Appellee.**

**No. 13568.**

Court of Appeals of Texas, Austin.

April 6, 1983.

Rehearing Denied April 27, 1983.

Robert O. Smith, Salmanson, Smith & Booker, Austin, for appellant.

Frank T. Ivy, Ivy & Bercu, Austin, for appellee.

Before PHILLIPS, C.J., and POWERS and GAMMAGE, JJ.

PHILLIPS, Chief Justice.

Appellant Robert Ogden appeals the trial court's judgment, based upon the jury's verdict, awarding appellee De Anne Wilson $10,250 in actual and exemplary damages for appellant's conversion of appellee's personal property.

In April of 1977, appellee and Griff Lloyd, as partners, purchased, through Austin Business Brokers, a restaurant and bar at 1112 W. 6th Street, Austin, Texas, from its owner Chic Karte. Appellee paid $4,500 down, and agreed that she would pay Karte another $3,065 before the end of May, and that she would assume an outstanding bank note in the amount of $3,435 payable to the Bank of Austin. All in all, appellee promised to pay Karte $11,000 for the business; $6,500 of the purchase price being apportioned by Karte, Austin Business Brokers, and appellee as the purchase price of the equipment. The remaining $4,500 was apportioned for the purchase of the business' "good will."

Appellant Ogden owned the building in which the business was located, and al-though he contended at trial that no new written lease had ever been signed by appellee and himself, the jury found that such a written lease had existed and had been signed. Appellee paid appellant the agreed rent by individual checks for the months of May, June, and July. Unknown to appellee, the rent checks drawn on the business account for the months of June and July were refused by her bank and returned for insufficient funds.

On July 12, 1977, appellant contacted appellee and informed her that he was terminating the lease and keeping the equipment within the business because of appellee's failure to promptly pay her monthly rent. The next day appellant had the locks changed on the business and effectively locked appellee out of her establishment, retaining appellee's personal property without the benefit of judicial foreclosure.

Appellee brought suit for appellant's wrongful conversion of her purchased equipment. In answering the submitted special issues, the jury found that appellee's property had been *maliciously* converted by appellant, and that the equipment's reasonable market value was $5,000. The jury also awarded appellee $12,750 in exemplary damages. The trial court overruled appellant's motion for new trial on the condition that appellee remit $7,500 of her exemplary damages award. Appellee complied.

Appellant by his first three points of error challenges the sufficiency of the evidence presented to establish the reasonable market value of the converted property. By his last point of error, appellant contends that no exemplary damages may be awarded appellee since she failed to adequately prove her actual damages by failure to sufficiently prove the reasonable market value of the converted property. Appellee by cross-point of error challenges the trial court's remittitur of the jury's award of exemplary damages.

We overrule appellant's points of error. We find no error in the judgment of the trial court insofar as it awards appellee her actual damages as determined by the jury.

We sustain appellee's cross-point of error and will reform the trial court's judgment reflecting remittitur, and render judgment that appellee recover the exemplary damages awarded to her by the jury.

## I.

Appellant challenges the sufficiency of the evidence presented by appellee at trial below to support the jury finding of $5,000 as the reasonable market value of the converted property. Appellant alternatively contends that there is "no evidence" of the property's value at the time and place of the conversion, or if any evidence was presented, it is "insufficient" to support the jury finding as to the value of the restaurant and bar equipment.

Appellant initially raises a "no evidence" point, which questions the legal sufficiency of the evidence presented in support of the jury's award of actual damages. In reviewing the legal sufficiency of the evidence, we must review the evidence in its most favorable light, considering only the evidence and the inferences which support the jury finding. In so doing, we must reject all the evidence and inferences which are contrary to the finding. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (Tex.1950); *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696 (Tex.1914).

In reviewing the record, in regard to appellant's contention that the evidence is factually insufficient to support the jury's finding that the converted property had a reasonable market value of $5,000, we must consider and weigh all of the evidence presented below to determine if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust; regardless of whether the record contains some evidence of probative force in support of the jury finding. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (Tex. 1951).

However, before we can determine whether the evidence is legally or factually sufficient, we must determine what evidence appellant had to present below in order that she prove the value of the converted property.

The general measure of recovery for damages in a conversion suit is the fair market value of the converted property at the time and place of the actual conversion, with legal interest. *Imperial Sugar Co., Inc. v. Torrans,* 604 S.W.2d 73 (Tex.1980); *American Surety Co. of New York v. Thompson,* 38 S.W.2d 576 (Tex.1931); *Tucker v. Hamlin,* 60 Tex. 171 (1883). But, when the property, because of its very nature, has no readily ascertainable fair market value, the measure of damages is the actual value of the property to the owner at the time of its loss. *Crisp v. Security National Insurance Co.,* 369 S.W.2d 326 (Tex.1963); *American Transfer & Storage Co. v. Reichley,* 560 S.W.2d 196 (Tex.Civ.App.1977, writ ref'd n.r.e.). This "actual value" measure of damages has been previously employed by the courts of this State in determining the value of furniture and equipment used in the operation of a hotel, *Wutke v. Yolton,* 71 S.W.2d 549 (Tex.Civ.App.1934, writ ref'd); in determining the value of furniture and equipment used in the operation of a tavern, *Eisemann v. Emmons,* 399 S.W.2d 428 (Tex.Civ.App.1965, no writ); and in determining the value of furniture, equipment, and supplies used in the operation of a restaurant, *Wright v. Gernandt,* 559 S.W.2d 864 (Tex.Civ.App.1977, no writ), against the contention that the proper measure of damages should be the "reasonable market value" of the converted property.

Accordingly, we hold in this cause that this latter measure of damages is the proper measure because of the nature of the property converted—used furniture and equipment used in the operation of a restaurant and bar.

Having determined the correct measure of damages, we now must determine how the proof may be presented to establish appellee's damages. The general rule in conversion cases is that no matter what measure of damages is employed in

establishing the value of the converted property, "it is well settled that the owner of property can testify as to his opinion regarding the value of his own property, even though he would not qualify to testify as the value of like property belonging to another .... Our courts have also held that even if the owner's testimony is 'halting and indefinite' it nonetheless will be sufficient to sustain a verdict *when there is no controverting evidence.*" (emphasis added) *Espinosa v. Schomberg,* 601 S.W.2d 161, 164 (Tex.Civ.App.1980, writ ref'd n.r.e.); *see also Allstate Insurance Co. v. Chance,* 590 S.W.2d 703 (Tex.1979); *Conann Constructors, Inc. v. Muller,* 618 S.W.2d 564 (Tex.Civ.App.1981, writ ref'd n.r.e.).

In reviewing the record, we find that it is uncontested that the converted property was valued at $6,500 several months before appellant's conversion of the property. This figure was agreed upon as the equipment's purchase price through arm's length negotiations had among Austin Business Brokers, the agent of the sale; Chic Karte, the establishment's former owner; and appellee, held during the purchase of the restaurant and bar. At trial appellee further testified:

Q: Did you, in the course of purchasing the property, have conversations with regard to its value with the prior owner, the business brokers, and your partner?
A: Yes, I did.
Q: And what did you allocate as a portion of the purchase to the value of these fixtures?
A: The price that we paid for them.
Q: And what was that price?
A: $6,500.
Q: *Do you consider that the value of the property?*
A: *Yes, sir. I do.* [emphasis added]

Appellant contends that such testimony is insufficient to establish the value of the converted property since appellee failed to expressly state that such was the value at the time and place of the actual conversion. We disagree.

In reviewing the record, we find that appellee has *substantially* met her burden of proof in establishing the value of the converted property. Having presented uncontested proof that the property was worth $6,500 several months before the conversion, and having presented uncontested proof that the property was worth $6,500 at the time when she was questioned at trial, we hold in the absence of *any* controverting proof, that it is only reasonable to infer that the property had a value of $6,500 when illegally taken by appellant. *See* Ray, Law of Evidence, 3rd ed., vol. 1, § 100, p. 156–59 (1980) (authorities therein) (When evidence is in sole control of a party, and that party refuses to produce that evidence, it is proper for the court to presume that the evidence would have been unfavorable to him. The jury may also draw all reasonable inferences which are unfavorable to him.) To remand this cause for new trial because of appellee's alleged failure to employ the *formal* words in establishing the property's value which appellant demands would serve absolutely no purpose.[1]

Accordingly, having found that appellee's proof is "legally" and "factually" sufficient to support the jury's findings as to the value of the converted property, we overrule appellant's first two points of error.[2]

## II.

Appellant next contends that the jury's award of exemplary damages is improper

1. Unlike appellant's cited authority in which the appellate court remanded the cause for further development of the proof of the value of the converted property, the property in the case at bar no longer exists to be appraised and examined as a direct result of appellant's actions. It must also be noted that, although appellant had exclusive access to the property, at no time throughout the trial did he dispute appellee's evaluation of the property.

2. Any alleged error in the trial court's submission of the special issue seeking the value of the converted property is waived by appellant's failure to so object to its submission. Tex.R. Civ.P.Ann. 274, 279 (1979); *Employment Advisors, Inc. v. Sparks,* 368 S.W.2d 199 (Tex. 1963); *McCreless Properties, LTD. v. F.W. Woolworth Co.,* 533 S.W.2d 863 (Tex.Civ.App. 1976, writ ref'd n.r.e.).

since appellee failed below to present sufficient evidence to support the jury's finding as to the value of the converted property. In the alternative, appellant contends that if the award of exemplary damages was proper the remittitur of the award was proper. Appellee by cross-point of error contends that the trial court's action in conditioning the overruling of appellant's motion for new trial on appellee's remittitur of $7,500 was "manifestly unjust," and therefore, improper.

Texas R.Civ.P.Ann. 328 (1977) states:

New trials may be granted when the damages are manifestly too small or too large, provided that whenever the court shall direct a remittitur in any action, and the same is made, and the party for whose benefit it is made shall appeal in said action, then the party remitting shall not be barred from contending in the appellate court that said remittitur should not have been required either in whole or in part, *and if the appellate court sustains such contention it shall render such judgment as the trial court should have rendered without respect to said remittitur.* [emphasis added]

■ Initially, we note that the trial court could properly condition the overruling of appellant's motion for new trial on appellee's remittitur of her exemplary damage award. *Gulf, C. & S.F. Ry. Co. v. Deen,* 158 Tex. 466, 312 S.W.2d 933 (Tex.1958); *Union Carbide Corp. v. Burton,* 618 S.W.2d 410 (Tex.Civ.App.1981, writ ref'd n.r.e.). The only matter to be determined is whether the trial court's action, in ordering the remittitur, is "manifestly unjust."

The Texas Supreme Court in *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835, 840–41 (Tex.1959) stated:

The Court of Civil Appeals, in passing upon the action under rule 328 [remittitur by trial court], should allow the trial court's action to stand unless it be of the opinion that the remittitur ordered by the trial court, *when considered in light of the whole record, would render the order of remittitur manifestly unjust.* If, in light of all the facts and circumstances, the trial court's order of remittitur was manifestly unjust, *the Court of Civil Appeals should restore the remittitur* or such part thereof as the Court of Civil Appeals deems necessary to prevent the order from being manifestly unjust *and render such judgment as the trial court should have rendered.* [emphasis added]

Therefore, this Court will review the entire record and determine, in the light of all the facts and circumstances of the cause below, whether the remittitur was "manifestly unjust." Since that remitted was an exemplary damage award, based upon the jury's finding that appellant's actions were a "heedless and reckless disregard of the rights of another ... the result of malice and conscious indifference," we must review the evidence presented below showing such malice to see if the remittitur was "manifestly unjust."

In reviewing the record, we find that appellant initially contended that (1) he did not enter into a written lease with appellee, (2) he was not aware of the purchase of the establishment by appellee from Chic Karte, (3) he was not aware that appellant's partner had taken the proceeds of the business and had left appellee near financial and physical collapse, and (4) he was unsure as to his proper legal remedies upon appellee's failure to timely pay her rent. Upon examining the record in further detail, we find that (1) evidence was presented, upon which the jury based its finding, that a lease had existed, that appellant had secured appellee's copy of the lease through deception, and that appellant denied afterwards that a lease had ever existed, (2) photographs were presented below in which appellant was prominently shown at the actual closing of the sale of the establishment by Karte to appellee, (3) appellant was in appellee's establishment *at least* three nights a week by his own admission and was fully informed of appellee's precarious situation, and (4) appellant owns at least fifty other pieces of property and was quite sophisticated in the real estate market and undoubtedly was fully aware of his legal remedies. The evidence further shows that appellant admit-

ted that he knew he did not own the equipment located within the establishment, having been purchased by appellee with money she had inherited from her father's estate, but that he refused appellee access to this equipment even after appellee offered to pay her past due rent in cash the morning after she learned of her debts. The evidence further shows that the converted property is "scattered to the four corners of the earth" through appellant's actions.

 The purpose of exemplary damages is not to compensate the injured party, but to punish the actor who caused the injury and use the punishment as an example to deter others from committing like acts. *Bernal v. Seitt,* 158 Tex. 521, 313 S.W.2d 520 (Tex.1958); *Cotton v. Cooper,* 209 S.W. 135 (Tex.1919); *Courtesy Pontiac, Inc. v. Ragsdale,* 532 S.W.2d 118 (Tex.Civ. App.1975, writ ref'd n.r.e.); Prosser, Law of Torts, 4th ed., ch. 1, § 2, p. 9 (1971). We hold that the exemplary damages *found by the jury,* are reasonably calculated to punish appellant and deter others from such malicious acts. We hold that they are not the result of prejudice, passion, or mere whim, but are reasonably grounded in the community's reaction, found in the jury's verdict, to the actions of appellant.

We are ever mindful that exemplary damages must bear some proportional relationship to the actual injury sustained by appellee, as found by the jury in their award of actual damages. *Alamo Natl. Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981); *Tynberg v. Cohen,* 76 Tex. 409, 13 S.W. 315 (Tex.1890); *Crutcher-Rolfs-Cummings, Inc. v. Ballard,* 540 S.W.2d 380 (Tex.Civ.App.

1976, writ ref'd n.r.e.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). In reviewing the respective jury awards, we hold that the jury's award of exemplary damages is entirely reasonable and equitably proportional to the actual damages sustained by appellee and *found by the jury.*[3]

We hold that the trial court's action in remitting appellee's recovery of the jury's award of exemplary damages was "manifestly unjust" and an abuse of its discretion. Accordingly, we reform the trial court's judgment, and here render judgment to provide that appellee recover all damages found by the jury—actual damages as well as exemplary damages. Tex.R. Civ.P.Ann. 435 (1967).

---

**3.** Exemplary damages were defined in the trial court's charge as "an amount which you may in your discretion award as an example to others and as penalty or by the way of punishment, in addition to any other damages which may have been found by you as actual damages. In connection with exemplary damages you may consider, in your discretion, such elements as compensation for inconvenience, attorney's fees, expense of litigation, and other elements not recoverable by actual damages."

Uncontested evidence of appellee's reasonable attorney's fees was presented in the trial court below. This evidence shows appellee will owe her attorney more than $9,000 in attorney's fees at the end of this litigation. Such evidence was presented to the jury for their consideration in determining the exemplary damage award. By our re-establishment of the amount subject to the trial court's remittitur, appellee will suffer no damages from appellant's act, but she will also receive no gain from his acts. If the trial court's remittitur was sustained, appellee in fact would have lost more money by being successful in this cause then if she had sought no judicial redress of appellant's malicious acts. Such does not seem to be the purpose of our courts.