# IN THE SUPREME COURT OF TEXAS

No. 18-0426

WILLIAM A. BREWER III, PETITIONER,

v.

LENNOX HEARTH PRODUCTS, LLC; TURNER & WITT PLUMBING, INC.; STRONG CUSTOM BUILDERS, LLC; THERMO DYNAMIC INSULATION, LLC; STATE FARM LLOYDS INSURANCE COMPANY; KEN AND BECKY TEEL; ROSS AND MEG RUSHING, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

JUSTICE BOYD, concurring in part and dissenting in part.

An attorney commissioned a pretrial telephone survey of residents within the community where the suit was about to be tried. After an extensive evidentiary hearing, the trial court found the attorney engaged intentionally and in bad faith in "an abusive litigation practice that harms the integrity of the justice system and the jury trial process." Relying on its inherent authority to sanction such misconduct, the court ordered the attorney to pay other parties' attorney's fees and expenses and to complete ten extra hours of legal-ethics education. Today the Court vacates that order, holding that (1) a court cannot exercise its inherent authority to sanction an attorney who abuses the judicial system unless the court finds the attorney acted in bad faith, *ante* at ___, and (2) this record contains no evidence to support the trial court's finding that this attorney acted in bad faith, *ante* at ___.

Regarding the Court's second holding, I have repeatedly documented my view that "no evidence" should mean "*no* evidence."[1] The trial court entered specific fact findings after conducting a hearing "over the course of seven days," *ante* at ___, and three distinguished appellate jurists—after making "an independent inquiry of the entire record," including "the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's sanctionable conduct"—unanimously agree that *some* evidence supports the trial court's findings, *Brewer v. Lennox Hearth Prods., LLC*, 546 S.W.3d 866, 876 (Tex. App.—Amarillo 2018). Holding that the evidence on which those judges relied was not actually *any* evidence at all should be a most difficult task.

But I find the Court's first holding far more important and concerning. Before today, this Court has never held that trial courts can only exercise their inherent authority to sanction a party or attorney if they first find that the party or attorney acted in "bad faith." Globally applying a bad-faith requirement to all inherent-authority sanctions for all sanctionable conduct unnecessarily

---

[1] *See, e.g.*, *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 817 (Tex. 2018) (BOYD, J., dissenting) ("Because a reasonable juror could conclude from this evidence that Clark suffered harassment because of sexual desire or because of her gender-specific anatomy and characteristics, I would hold that the evidence is sufficient to create a fact issue on whether Clark suffered discrimination 'because of sex' under the TCHRA."); *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 501 (Tex. 2017) (BOYD, J., dissenting) ("At least some evidence established that USI did not have control of the scaffold at the time of Levine's accident, and the evidence certainly did not conclusively establish that USI had such control."); *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 718 (Tex. 2016) (BOYD, J., dissenting) ("Because Toledo provided some evidence that an ordinary viewer could have understood the broadcasts to assert that she engaged in sexual contact with a pediatric patient, our jurisprudence makes it the jury's duty, not this Court's, to decide whether the broadcasts were defamatory, false, or privileged. The Court's result-driven approach ignores our own precedent and the applicable standard of review and thereby usurps the jury's role in this case."); *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 13 (Tex. 2015) (BOYD, J., dissenting) ("This record contains at least some evidence that it was both foreseeable and likely that untrained non-professionals would use the Genie lift, that they would destabilize it while the platform was raised and occupied despite the warnings and the allegedly obvious dangers, and that doing so would result in serious injuries and death, no matter how high the platform is elevated."); *Elizondo v. Krist*, 415 S.W.3d 259, 271 (Tex. 2013) (BOYD, J., dissenting) ("I believe the Court imposes too strict a standard at this summary judgment stage. Because the expert based his opinion on facts that could support a finding that the Elizondos' claims had substantial merit but were settled as if they had no merit at all, I would hold that the Elizondos created a fact issue on the existence of malpractice damages.").

handcuffs our state's trial courts and undermines the very reason they possess inherent authority in the first place.[2]

Instead of globally requiring bad faith in all contexts, we have explained that the courts' inherent authority,[3] which derives from their constitutional creation and duties, exists so that they can "effectively perform their judicial functions and . . . protect their dignity, independence and integrity." *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 399 (Tex. 1979). We have held that courts may rely on this power to sanction both "recalcitrant litigants," *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 572 (Tex. 2018) (per curiam), and "errant counsel" who engage in "improper trial conduct," *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 172 (Tex. 1993). We have said that courts have inherent authority to sanction attorneys for an "abuse of the judicial process" and for conduct that "breeds disrespect for and threatens the integrity of our judicial system." *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (per curiam).[4] And they have "not only the

---

[2] The Court imposes its global bad-faith requirement because of its concern that the trial courts' "wield[ing] inherent powers of intrinsic potency and unconstrained breadth necessitates the restraint and caution the bad-faith predicate encapsulates." *See ante* at ___. But our system is designed to constrain the limits of inherent sanctions. Indeed, the Court cites ample opinions in which courts of appeals reversed a trial court's use of its inherent power to sanction. *See ante* at ___ (citing *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 148 (Tex. App.—Dallas 2011, no pet.) (reversing sanctions award); *McWhorter v. Sheller*, 993 S.W.2d 781, 789 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (same); *Onwuteaka v. Gill*, 908 S.W.2d 276, 281 (Tex. App.—Houston [1st Dist.] 1995, no writ) (same)). The courts of appeals constrain a trial court's inherent authority to sanction even when bad faith exists. *See Harmouch v. Michael A. Rassner, D.D.S., P.C.*, No. 01-10-00367-CV, 2011 WL 1435008, at *4 (Tex. App.—Houston [1st Dist.] April 14, 2011, no pet.) (mem. op.) (vacating sanctions order despite evidence of bad faith because no evidence existed that the "bad faith conduct interfered with the legitimate exercise of the trial court's core functions."). If the lower courts have been able to constrain the use of the inherent authority to sanction for "decades," I see no reason why creating an additional requirement of bad faith is necessary today.

[3] To be clear, we are addressing here a trial court's *inherent* authority to sanction an attorney, not authority granted by statute or rule. *See ante* at ___ n.2 (listing sources of courts' authority to sanction).

[4] The Court stretches to characterize *Bennett* as globally requiring bad faith, suggesting that we used "equivalent language" when we referred to "abuse of the judicial process." *See ante* at ___ n.66. But as the definitions the Court itself cites confirm, "abuse" includes conduct that has a "bad effect" as well as a "bad purpose," and use that is "improper" as well as "wrong." *Id.* An attorney's conduct can abuse the judicial process without bad faith.

power but the *duty* to insure that judicial proceedings remain truly adversary in nature." *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988).

To protect the integrity of the judiciary and judicial process, trial courts rely on their inherent authority to impose a wide array of sanctions—from slap-on-the-wrist ethics-education orders to death-penalty dismissal orders—in response to an equally wide array of sanctionable conduct. In each case, however, we have repeatedly demanded that with all sanctions, whether based on inherent authority or not, the punishment must fit the crime. *See Altesse Healthcare*, 540 S.W.3d at 572 (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)).[5]

As the Court explains today, a trial court's decision to impose sanctions involves two determinations—"(1) whether conduct is sanctionable and (2) what sanction to impose"—but because the punishment must fit the crime, the two are not nearly as "distinct" as the Court suggests. *Ante* at ___. Because "a direct relationship must exist between the offensive conduct and the sanction imposed," conduct that is "more" sanctionable justifies sanctions that are "more" punitive. *Altesse Healthcare*, 540 S.W.3d at 572 (quoting *TransAmerican*, 811 S.W.2d at 917). The most "extreme sanctions," like a death-penalty dismissal order (or worse), requires a finding not just of "bad faith," but of "flagrant" or "extreme" bad faith. *Id.* at 575–76. But for the less extreme sanctions, like an order requiring legal-ethics training, we have never required "bad faith" at all.

---

[5] *See also Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 363 (Tex. 2014); *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 187 (Tex. 2012); *PR Invs. & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 480 (Tex. 2008); *In re SCI Tex. Funeral Servs., Inc.*, 236 S.W.3d 759, 761 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992); *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex. 1992).

Different levels of culpability—such as bad faith, intent, or negligence—warrant different types of sanctions. Take, for example, spoliation sanctions. When a party loses, alters, or destroys relevant evidence, the trial courts inherently "have discretion to fashion an appropriate remedy to restore the parties to a rough approximation of their positions if all evidence were available." *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003). Neither the Texas Rules of Evidence nor the Texas Rules of Civil Procedure specifically addresses spoliation, although they do enumerate remedies for discovery abuses. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 18 (Tex. 2014). But a trial court also has the inherent "discretion to craft other remedies it deems appropriate in light of the particular facts of an individual case, including the submission of a spoliation instruction to the jury." *Id.* at 21. As with all sanctions, the remedy must have a direct relationship to the act of spoliation and may not be excessive. *Id.* (citing *TransAmerican*, 811 S.W.2d at 917). "Key considerations in imposing a remedy are the level of culpability of the spoliating party and the degree of prejudice, if any, suffered by the nonspoliating party." *Id.* at 14. And while a spectrum of available remedies exists, "the harsh remedy of a spoliation instruction is warranted only when the trial court finds that the spoliating party acted with the specific intent of concealing discoverable evidence, and that a less severe remedy would be insufficient to reduce the prejudice caused by the spoliation." *Id.*[6] Thus, intentional wrongful conduct is required for the harshest spoliation sanction, but is not required for *all* spoliation sanctions.[7]

---

[6] We clarified that "'intentional' spoliation, often referenced as 'bad faith' or 'willful' spoliation, [means] that the party acted with the subjective purpose of concealing or destroying discoverable evidence." *Brookshire Bros.*, 438 S.W.3d at 24.

[7] A "narrow caveat" exists, however, allowing more severe sanctions in the "rare occasion[]" in which "a party's negligent breach of its duty to reasonably preserve evidence irreparably prevents the nonspoliating party from having any meaningful opportunity to present a claim or defense." *Id.* at 25.

Here, the trial court imposed two different sanctions: It ordered the attorney to pay opposing parties' attorney's fees and expenses and to complete ten extra hours of legal-ethics education. Consistent with U.S. Supreme Court precedent, I can accept the Court's new rule that a sanction order requiring a litigant or attorney to pay another party's attorney's fees and expenses must be based on a finding that the sanctioned party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F. D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974); *see also Goodyear Tire & Rubber Co. v. Heager*, — U.S. —, 137 S. Ct. 1178, 1186 (2017) ("[O]ne permissible sanction is . . . an order . . . instructing a party *that has acted in bad faith* to reimburse legal fees and costs incurred by the other side." (emphasis added)). As the Supreme Court has repeatedly explained, bad faith (or its equivalent) should be required for this type of sanction to ensure it remains a limited but well-established exception to the long-standing American Rule, which requires each party to pay its own attorney's fees unless a statute or contract provides otherwise. *F. D. Rich Co.*, 417 U.S. at 129; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66 (1980); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975). To preserve the policies behind the American Rule, a trial court may exercise its inherent sanctions authority to require payment of another party's attorney's fees only in these "narrowly defined circumstances" involving bad-faith conduct. *Roadway Express*, 447 U.S. at 765.

Like the Supreme Court, we have consistently affirmed the American Rule and the policies behind it. *See JCB, Inc. v. Horsburgh & Scott Co.*, No. 18-1099, — S.W.3d —, 2019 WL 2406971, at *8 (Tex. June 7, 2019); *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017); *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013); *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d

168, 172 (Tex. 2013); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). To preserves those policies, I agree that a finding of bad faith or its equivalent should be required before a trial court may exercise its inherent sanctions authority to require payment of another party's attorney's fees.

But the American Rule does not justify globally requiring bad faith as a prerequisite for all inherent-authority sanctions imposed to protect the integrity of the judicial process. Contrary to the Court's assertions, the U.S. Supreme Court does not require a bad-faith finding for all inherent-authority sanctions. *See, e.g.*, *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987) ("The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches."); *Illinois v. Allen*, 397 U.S. 337, 343 (1970) (recognizing trial courts' inherent authority to ban criminal defendants who disrupt conduct of trial); *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962) (recognizing trial courts' inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *Anderson v. Dunn*, 19 U.S. 204, 227 (1821) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.").

Ignoring the Supreme Court's express recognition that courts have the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Link*, 370 U.S. at 630–31, the Court instead relies repeatedly and exclusively on a single statement in the concluding paragraph of the Supreme Court's decision in *Roadway Express*, in

which the Court summarized its point that "the trial court did not make a specific finding as to whether counsel's conduct in this case constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers." *See ante* at ___ & n.32, ___ n.49, ___ n.71 (quoting *Roadway Express*, 447 U.S. at 767). But the sanction at issue in *Roadway Express* was an award of attorney's fees, and the Court's analysis and holding specifically addressed not a global bad-faith requirement for inherent-authority sanctions, but the "bad-faith *exception* [to the American Rule] *for the award of attorney's fees*." *Roadway Express*, 447 U.S. at 766 (emphasis added). Noting that "New York courts have sanctioned lawyers for mere negligence," the Court did not reject that standard but instead clarified that it was addressing only the attorney's-fees sanction before it: "this opinion addresses only bad-faith conduct." *Id.* at 767 n.13. In short, the Supreme Court has never held that bad faith is required to support *every* sanction under the courts' inherent authority, and neither should we.

The Court also relies on Texas courts of appeals decisions, which it says have universally required bad faith for "decades." *Ante* at ___. But this is simply not true. Some of the courts of appeals—like the *McWhorter* case on which the Court relies, *ante* at ___ n.28 (citing *McWhorter*, 993 S.W.2d at 781)—divided the inquiry between bad-faith conduct and conduct that interferes with the legitimate exercise of the trial court's core functions, finding either sufficient for a trial court to use its inherent authority.[8] For example, one appellate court explicitly denounced the

---

[8] The *McWhorter* case involved a sanction order awarding attorney's fees, and the court of appeals reversed the sanction not just because there was no bad faith, but because there was "no evidence that McWhorter's attorney acted in a manner which would interfere with the administration of justice or detract from the trial court's dignity and integrity," or "that the conduct complained of significantly interfered with the court's legitimate exercise of one of" its core judicial functions. *McWhorter*, 993 S.W.2d at 788–89. The other case on which the Court relies reversed a death-penalty sanction dismissing the party's pleading because "the trial court could not have reasonably concluded that Onwuteaka acted in flagrant bad faith when he appeared late for trial," and because there was "no evidence that the trial court considered some lesser sanction." *Onwuteaka*, 908 S.W.2d at 281.

global requirement of bad faith, explaining, "'Bad faith' may indeed be one basis for imposing inherent authority sanctions, but a survey of pertinent cases demonstrates broader considerations are involved when reviewing the propriety of sanctions imposed." *In re J.V.G.*, No. 09-06-015CV, 2007 WL 2011019, at *5 (Tex. App.—Beaumont July 12, 2007, no pet.) (mem. op.). In the absence of bad faith, the court found the trial court did not abuse its discretion by imposing sanctions because the attorney's conduct, "when taken together, could be found to have significantly interfered with the court's management of its docket as well as the issuance and enforcement of its orders." *Id.* at *10; *see also Kennedy v. Kennedy,* 125 S.W.3d 14, 19 (Tex. App.—Austin 2002, pet. denied) ("[A] court cannot invoke its inherent power to sanction without some evidence and factual findings that the conduct complained of significantly interfered with the court's legitimate exercise of one of its traditional core functions.").

Based on the evidence submitted in this case, the trial court specifically found, and the court of appeals agreed, that some of the survey questions, which the attorney personally reviewed and approved, were "designed to influence or alter the opinion or attitude of the person being polled." *Brewer*, 546 S.W.3d at 880. And the pool of those considered for survey included potential jurors, court personnel and their family members, city council members and their spouses, city managers, witnesses and their spouses, and designated third parties and their spouses. *Id.* at 879 n.7, 881. The trial court specifically found that the survey, as designed and implemented, was "highly prejudicial and inimical to a fair trial by an impartial jury," was "disrespectful to the judicial system," "threatening to the integrity of the judicial system," was incompatible with a "fair trial by an impartial jury," was "an abusive litigation practice that harms the integrity of the justice system and the jury trial process," and negatively affected "the rights of parties to a trial by an

impartial jury of their peers" and "the due process and seventh (7th) amendment protection due to

litigants in the case before the Court." *Id.* at 880. Today, the Court does *not* find that "no evidence"

supports these trial-court findings.[9] It finds only that "no evidence" supports the trial court's

finding that the attorney acted in bad faith when he authorized the survey. The attorney argued

that, although he may have exercised "bad judgment" or been negligent or even grossly negligent,

the trial court could not sanction him because no evidence established that he acted in "bad faith."

*Id.* at 878–79.

The Court agrees, suggesting that the "mere violation" of an "ethical standard in connection

with conducting a pretrial survey does not *ipso facto* constitute bad faith." *Ante* at ___. That may

be, but it does ipso facto constitute the violation of an ethical standard. And here, at least, the trial

court found that the attorney's unethical conduct seriously threatened the integrity of the judicial

process, and that finding on this evidence would justify the court's decision to exercise its inherent

authority to impose an appropriate sanction, regardless of whether the attorney acted negligently,

intentionally, or in bad faith. Assuming the absence of any evidence to support a finding of bad

faith, the sanction may not include an order requiring payment of other parties' attorney's fees, but

---

[9] Instead, the Court suggests that the trial court's specific fact findings are neither findings of "facts nor conclusions of law." *Ante* at ___ n.75. Of course, if they are neither fact findings nor legal conclusions, one must wonder what they are. Perhaps the Court thinks they are merely the trial court's belief or opinion, but a fact finder's belief or opinion of the facts, based on the evidence presented, is of course the fact finder's finding of fact. *See Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 276–77 (Tex. 2015) (listing facts "the jury could have believed"); *Mut. Life Ins. Co. of N.Y. v. Tillman*, 19 S.W. 294, 296 (Tex. 1892) (noting that "jury could form their own opinion from the facts"); *Bernal v. Seitt*, 313 S.W.2d 520, 521 (Tex. 1958) (summarizing facts "which the jury might reasonably have believed to be true from the evidence"). And as to the Court's reference to the standard of review, the court of appeals made "an independent inquiry of the entire record" and concluded that the trial court did not abuse its discretion by making these findings. *Brewer*, 546 S.W.3d at 876, 882. The Court has made its own independent inquiry of the record and concludes that the trial court abused its discretion by finding bad faith, but it never concludes that the trial court abused its discretion by finding that the survey, as conducted, threatened the integrity of the judicial system.

it certainly may include an order requiring the attorney to attend additional legal-ethics education courses.

Accepting for these purposes the Court's conclusion that the record contains "no evidence" of bad faith, I concur in the Court's judgment to the extent it vacates the trial court's order requiring the attorney to pay other parties' attorney's fees and expenses. But to the extent the Court vacates the trial court's order requiring the attorney to take additional legal-ethics education courses, and to the extent it requires trial courts to find bad faith before exercising their inherent authority to impose any form of sanction, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: April 24, 2020